WILLIAM EINBECKER *et al.*

. *v.*

ANNA EINBECKER.

*Filed at Ottawa June 13, 1896.*

162 267
182 100
162 267
f204 ³593
e107a³318
107a ³319

1. WILLS—*whether principal of fund is liable for arrearages of annuity.* Whether or not the principal of a fund, the income of which is set apart by will to pay an annuity, is liable for arrearages in such annuity, where the annual income is insufficient, depends upon the intention of the testator, to be gathered from the language used.

2. SAME—*all parts of will must be considered.* A will should be so construed as to give effect, if possible, to every part of it.

3. SAME—*when principal of fund must be preserved intact.* The principal of a fund, the income of which is set apart to pay an annuity, cannot be drawn upon to make up deficiencies in the annuity, where the terms of the will show the intention of the testator to be that at the death of the annuitant the entire fund shall pass to those who are to take after such death, notwithstanding power be given the trustee to sell any of the property.

*Einbecker v. Einbecker*, 62 Ill. App. 611, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill to compel the trustees under the will of George Einbecker, deceased, to pay the annuity therein provided. The will is as follows:

"*First*—I give and bequeath to my son William Einbecker the saloon known as No. 2622 Wentworth avenue, in the city of Chicago, and all the stock in trade and other goods and chattels thereto belonging.

"*Second*—I give and bequeath to my son George Einbecker the saloon on the corner of Thirty-seventh street and Wentworth avenue, in the city of Chicago, and all the stock in trade and other personal property thereto belonging.

"*Third*—I give and bequeath to my son Heinrich Einbecker the saloon known as No. 4120 State street, in the

city of Chicago, and all the stock in trade and other personal property thereto belonging.

"*Fourth*—I hereby nominate and appoint my said three sons, William Einbecker, George Einbecker and Heinrich Einbecker, to be the trustees under this my last will and testament, and I do hereby give and bequeath to my said trustees all my real and personal estate of whatever name and description, except the three saloons above described, to have and to hold the same to them and their successors in trust, for the following uses and purposes, that is to say: (*a*) In trust to manage my estate, collect the rents and other incomes arising therefrom, make leases of my real estate for such term as they may deem best, and to invest and re-invest all moneys coming to their hands as such trustees in good interest-bearing securities. (*b*) In trust, further, to pay to my wife, Anna Einbecker, out of the moneys so arising from my estate, the sum of one hundred dollars ($100) per month during her natural life, but so long as my youngest child, Cecelia, remains with her mother, my said wife shall receive the sum of one hundred and twenty-five dollars ($125) per month, instead of one hundred dollars ($100) per month, as hereinbefore stated. When my estate is divided between my children as hereinafter stated, my said trustees shall retain in their possession a sufficient capital, consisting either of real estate or securities, to insure, from the income arising from the same, the prompt payment of the monthly allowance so made to my wife as aforesaid. (*c*) In trust to divide and partition my said estate so soon as my youngest child, Cecelia, arrives at the age of eighteen years, and no sooner, between all of my children, share and share alike, the descendants of a deceased child to take the parent's share. But should my said youngest child die before she reaches the age of eighteen years, then the division and partition of my estate, as hereinbefore directed, shall be made in the year nineteen hundred (1900). (*d*) Upon the death of my wife

the property and securities retained by my trustees for the purpose of insuring the payment of the allowance to her, as above stated, shall also be partitioned and divided between all my children, in the manner and at the time above set forth.

"*Fifth*—I further direct that my said wife shall have the right to occupy the homestead, being that part of the property known as No. 4120 South State street, in the city of Chicago, now occupied by us, free of rent or other charge during her natural life.

"*Sixth*—I hereby give to my said trustees full power to sell and convey any and all of my real estate, on such terms and for such price as they may deem best; and upon the death of any one of said trustees, the duties to be performed and the powers to be exercised by them jointly shall be performed and exercised by the survivors or survivor, as the case may be, and in case of the death of all three of said trustees a successor shall be appointed by the circuit court of Cook county.

"*Seventh*—I hereby nominate and appoint my said three sons to be the executors of this my last will and testament, and direct that they be not required to give bond as such."

The decree of the circuit court of Cook county, entered October 2, 1895, finds that George Einbecker died July 24, 1892, leaving said will; that he left him surviving, Anna Einbecker, his widow, and his nine children, to-wit, William Einbecker, George Einbecker, Heinrich Einbecker, John Einbecker, Charles Einbecker, Mary Einbecker, Benjamin Einbecker, Kathrina Einbecker and Cecelia Einbecker, his only heirs-at-law; that the net income arising from the estate has not hitherto been sufficient to pay said widow the whole of said monthly allowance of $125; that said Cecelia Einbecker is still a minor and is living with her mother, Anna Einbecker; that all the rest of said children are of full age; that a portion of the real estate left by said deceased has been

sold by the executors since his death, and that said executors have in their hands certain proceeds of such sales, sufficient to make up to said widow the unpaid portion of said $125 per month; that since the death of said deceased there has been paid to said Anna Einbecker, on account of said monthly allowance of $125, the sum of $3150 in all, and that there is now due her the sum of $1350 under the provisions of said will, in order to make up to her the full monthly allowance at the rate of $125 per month since the death of said deceased; and the decree orders that the complainants, as trustees, do forthwith pay to the said Anna Einbecker, on demand, $1350; that in case the net rents of the remaining trust estate shall at any time be insufficient to pay said monthly allowance in full to said widow, then they shall make good any deficiency out of the *corpus* of the trust estate. The decree also finds that the executors of said will have made their final report in the probate court of Cook county, showing that all personal assets of said estate have been collected and all claims and demands legally established against the same in the said court have been fully paid, and that the said executors, out of their own means, have advanced a sum of $3691.20 for the purpose of settling said estate; that on December 6, 1894, said report of said executors was approved by said probate court, and it was ordered that said estate be declared settled and said executors discharged as soon as the said sum of $3691.20 should be repaid to them and they should go into said probate court and release the same. The decree further orders that the complainants who are executors have leave to retain out of moneys in their possession belonging to the estate of said George Einbecker, deceased, the sum of $3691.20 so found to be due them by said probate court; that at any time hereafter the said Anna Einbecker, in case her monthly allowance is not paid to her regularly in full, may make application to this court for an order on said trustees to pay

the same, and that she is entitled to have any deficiency therein made good out of the estate of said George Einbecker, deceased, whether the same is income or *corpus*.

An appeal was prayed to the Appellate Court from the foregoing decree.. A stipulation was entered into between the counsel for the respective parties, the material portion of which is as follows: "It is further stipulated and agreed, that in the decree of said circuit court entered in the above entitled cause on October 2, 1895, all the findings of fact are true except the finding that there is due to the defendant, Anna Einbecker, the sum of $1350, and that the only question in dispute in this cause between the complainants and the defendant, Anna Einbecker, is, whether the defendant, Anna Einbecker, is entitled to be paid out of the estate of said George Einbecker, deceased, by the terms of his will, the full sum of $125 per month even if a portion thereof must be taken from the *corpus* of the estate, or whether, the income being less than $125 per month, she must be confined in her allowance to the income as it is and leave the *corpus* untouched."

This stipulation, together with an attached copy of the will and letters testamentary, was certified by the clerk of the circuit court to the Appellate Court, and, with the decree of the circuit court, filed in the Appellate Court in lieu of a full record under section 74 of the Practice act.

The Appellate Court has affirmed the decree of the circuit court, and the present appeal is prosecuted from such judgment of affirmance.

LACKNER & BUTZ, for appellants:

The intention of the testator governs in all cases, so that a direction to pay an annuity out of the rents and profits charges only the rents and profits, and not the *corpus* of the estate, unless the contrary appears. 1 Am. & Eng. Ency. of Law, 594; 13 id. 178, and cases cited.

RICHARD PRENDERGAST, and J. E. DEAKIN, for appellee:

Where a sum of money is by will directed to be paid periodically to a person out of a residuary estate, and not specifically out of the income resulting from some specific fund or estate, it is nothing more nor less than a gift in the nature of a legacy payable by installments, and, as such, payable out of any residuary estate for the time being in the hands of the trustees, and not more so out of income than out of *corpus*. *Wright* v. *Callender*, 2 DeG., M. & G. 652; *Davis* v. *Wattier*, 1 Sim. & Stu. 464; *May* v. *Bennett*, 1 Russ. Ch. 330; *Swallow* v. *Swallow*, 1 Beav. 432; *Mills* v. *Drewitt*, 20 id. 632; *Baker* v. *Baker*, id. 548; *Hodge* v. *Lewin*, 1 id. 431; *Stamper* v. *Pickering*, 9 Sim. 176; *Boyd* v. *Buckle*, 10 id. 596; *Arundell* v. *Arundell*, 1 Myl. & K. 316.

The local statute (Dower act, sec. 10,) has an important bearing on the question before the court, for it, in effect, places the provision given by the will of George Einbecker on the same footing as "an annuity in lieu of dower" at common law,—that is, the widow is entitled to have it wholly or in part paid out of *corpus*. *Stamper* v. *Pickering*, 9 Sim. Ch. 176, and note on p. 177; *Blatchford* v. *Newberry*, 90 Ill. 11; *Corrigan* v. *Reed*, 40 Ill. App. 413; *Borden* v. *Jenks*, 140 Mass. 562.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Since the death of the testator, George Einbecker, the income from his estate has proved to be insufficient to pay to his widow, Anna Einbecker, the appellee herein, the sum of $125.00 per month directed by the will to be paid to her so long as her youngest child, Cecelia, remained with her; and the question in this case is, whether, there being a deficiency in the income, the *corpus* of the estate may be resorted to to make up the deficiency. Is the appellee entitled by the terms of the will to be paid out of the estate the full sum of $125.00 per month even

if a portion thereof must be taken from the *corpus* of the estate; or, the income of the estate being less than $125.00 per month, must she be confined in her allowance to the income as it is, and leave the *corpus* untouched?

It is often difficult to determine whether an annuity is to be paid out of the capital of an estate, or only out of the income of the estate. But the question must be decided, as a general thing, by so construing the language of the testator's will as to ascertain his intention; and when the intention is ascertained, it must be carried into effect. Each case will depend largely upon the meaning of the words used by the testator in his will. (*Baker* v. *Baker*, 6 H. L. Cas. 616.)

In *Irwin* v. *Wollpert*, 128 Ill. 527, we said, that a direction to pay an annuity out of the rents and profits charges only the rents and profits, and not the *corpus* of the estate, unless a contrary intention appears. In *DeHaven* v. *Sherman*, 131 Ill. 115, we said: "The rule is, that unless it appears it was intended by the testator to charge the payment of the annuities upon the *corpus* of the estate, they can only be enforced against the trustee, personally, so far as he has received the rents. The fee in the realty, whether for life or for years, cannot be sold for their payment." In *Forbes* v. *Richardson*, 11 Hare, 354, the vice-chancellor said: "I do not find any case where a direction for payment out of annual rents and profits has been held to give a right against the *corpus*." The words, "rents and profits," as used in wills in this connection, have generally been held to mean the annual rents and profits; and the old chancery rule, construing testamentary gifts of fixed sums by way of annuities payable out of rents and profits as authorizing the taking of a sufficient sum from the body of the estate to make up a deficiency, has been so modified as to make it the chief object of construction even in such cases to ascertain and give effect to the intention of the testator. (*Delaney* v. *VanAulen*, 84 N. Y. 16; 1 Am. & Eng. Ency. of Law, 594).

"Where an annuity is granted out of the income, and the income subsequently turns out to be insufficient for full payment, the deficiency cannot be made up from the *corpus* of the estate." (13 Am. & Eng. Ency. of Law, p. 177; *Delaney* v. *VanAulen, supra; Baker* v. *Baker, supra; Foster* v. *Smith,* 1 Phil. Ch. 629; *Earle* v. *Billingham,* 24 Beav. 445; *Sheppard* v. *Sheppard,* 32 id. 194; *Darbon* v. *Rickards,* 14 Sim. 537).

In the case at bar, the terms of the will must be examined in order to determine whether the testator, George Einbecker, intended to make the allowance to his wife a charge upon the capital of his estate as well as upon the income thereof, or whether he intended that it should be paid out of the income alone. We think it apparent, upon a cursory examination of his will as a whole, that he did not anticipate that the income of his estate would be insufficient to yield the amount of the allowance given to his wife. The intention to make the allowance payable out of the income, and not out of the body of the estate, will also appear from a study of particular parts of the will.

After giving each of three of his sons a saloon, he gives and bequeaths all his real and personal estate, except said three saloons, to his trustees to hold in trust for certain purposes. The first of these purposes is stated as follows: "In trust to manage my estate, collect the rents and other incomes arising therefrom, make leases of my real estate for such terms as they may deem best, and to invest and re-invest all moneys coming to their hands as such trustees in good interest-bearing securities." This language indicates an intention to have the estate so managed as to make it produce an income. Management of the estate here means the making of leases and the investment of moneys, and the collection of rents and other incomes. The next purpose, for which the property is to be held in trust, is stated as follows: "In trust, further to pay my wife  *  *  *  out of the

moneys so arising from my estate the sum of $100.00 during her natural life," etc. The word, "so," refers back to the next preceding paragraph, where the first purpose of the trust is stated. It is "out of the moneys *so* arising from my estate" that the allowance of the widow is to be paid, that is to say, out of moneys arising from leases and investments, from rents and' interest, or, in other words, from rents and profits. The phraseology used expressly negatives the idea, that the capital or *corpus* of the estate is to be drawn upon for the allowance. It is true, that paragraph 6 of the will gives the trustees power to sell and convey any and all of the real estate, but the proceeds of the sale are to be invested, because the trustees are directed to "invest and re-invest *all moneys* coming to their hands as such trustees in good interest-bearing securities." "*All moneys* coming to their hands" include the proceeds of sales made by them. It is the moneys arising from the investment of such proceeds, and not the proceeds themselves, which are to be applied towards the payment of the allowance.

That the widow's allowance was intended to be derived from the income, and not from the *corpus*, is further apparent from the following language: "When my estate is divided between my children, as hereinafter stated, my said trustees shall retain in their possession a sufficient capital consisting either of real estate or securities, to insure, *from the income arising from the same*, the prompt payment of the monthly allowance so made to my wife as aforesaid." We fail to see how words can more clearly indicate an intention to have the allowance paid out of the income, and not out of the body of the estate, than do the words here used.

Again, a subsequent clause of the will reads as follows: "Upon the death of my wife the property and securities retained by my trustees for the purpose of insuring the payment of the allowance to her as above stated, shall also be partitioned and divided between all

my children," etc.   Here is a gift over at the death of
the annuitant of the entire property or fund out of which
the annuity was to be paid.   It is not a gift over of the
residue of the fund after deducting what may be necessary
to make up a deficiency in the annuity.   In this respect
there is a clear distinction between many of the cases re-
ferred to by counsel for appellee and the present case.

There is much confusion and conflict among the Eng-
lish decisions upon this subject.   In Williams on Execu-
tors (9th ed. p. 1212, note *p*), there is a reference to the
cases in which annuities have been held payable out of
the *corpus* or capital of the testator's estate, and those
in which annuities have been held payable out of income.
The cases are also referred to in Theobald on Law of
Wills,—2d ed.—pp. 635-637.   We have examined most of
these cases, and find distinguishing marks of difference
between them.

"If there is anything to show that the *corpus* is looked
upon as entire after the annuitant's death, * * * it
is not liable to make good arrears." (Theobald on Law
of Wills, p. 637).   "If there is a direction to set apart a
sum of money in order to pay an annuity out of the divi-
dend with a gift over, the annuitant is not entitled to
come upon the *corpus*." (Id. p. 636).   "But if there is a
gift of an annuity and a residuary gift, the annuity takes
precedence, and the whole loss falls on the residuary lega-
tee." (2 Williams on Executors,—9th ed.—p. 1212).   "If
there is a clear gift of an annuity, a direction to set a
fund apart to secure it, which is to fall into the residue
upon the death of the annuitant, does not disentitle the
annuitant to have arrears made up out of *corpus*, since
the direction is merely a means to the end." (Theobald on
Law of Wills,—2d ed.—p. 636).   "If the capital is given
over 'subject to' or 'after payment' of the annuities, the
*corpus* is liable." (Id. p. 637).

If the will provides that a certain sum be paid annu-
ally or monthly to the widow, and that, at her death, the

*residue* be divided between, or paid over to, other persons, the intention would seem to be that the capital shall be drawn upon to make up the deficiency in the annuity, or monthly or yearly allowance. In such case, the residue is what is left of the *corpus* after it has been used for the purpose of making up the deficiencies in the annuity. But where the terms of the gift over show, that the testator intended the fund to be continued in its integrity during the life of the annuitant, and in that state to go over, the *corpus* cannot be resorted to to make up a deficiency in the annuity.

In the case at bar, the direction is, that the entire fund or property and securities, out of the income of which the widow's allowance is to be paid, shall, at her death, be divided among the children. The direction is, not that the fund set apart to provide for the annuity shall, after the annuitant's death, be paid over, or divided among the children, "after the payment" of the annuity, or "subject to" the payment of the annuity, or that the "residue" shall be divided among the children. The language of the will contemplates, that the fund shall be kept whole and passed over to the children without diminution.

In *Baker* v. *Baker*, 6 H. L. Cas. 616, where the case of *Baker* v. *Baker*, 20 Beav. 548, is overruled and the case of *May* v. *Bennett*, 1 Russ. Ch. 330, is disapproved of, a distinction is drawn by the lord chancellor between the case of *Wright* v. *Callendar*, 2 DeGex, M. & G. 652, and a case like the one at bar in the following words: "But in this case there is that very circumstance to which Lord CRANWORTH adverted as being absent in the case of *Wright* v. *Callendar*, because here it is apparent, from the language of the will, that the testator intended· that the fund should be continued in its integrity during the life of the annuitant, and in that state should go over." So also in *Michell* v. *Wilton*, L. R. 20 Eq. 269, the vice-chancellor said: "In the case of *Wright* v. *Callendar* the direc-

tion to set-apart a fund to provide for the annuity was followed by another direction that after the annuitant's death the sum to be invested should fall into the residue. * * * Treating it as residue must have assisted the court in coming to the conclusion that nobody could take anything from that particular fund until every part of the annuity had been provided for. * * * Here, a specific sum was to be set apart in order to provide for the annuity, and such sum is expressly given over, not as a residue, but as a particular fund, and by a separate and independent gift to the same persons as those to whom the general fund is given. It appears to me that I am bound by the authorities, as well as by the literal interpretation of the language of the will, to hold that this fund is not one out of which any arrears of annuity can be paid to the widow."

In *Tarbottom* v. *Earle*, 11 W. R. 680, a testator directed his trustees to invest a sum sufficient to pay £50 per annum to H. T., and on her marriage or death to divide the stocks, etc., from which the £50 should have been produced, equally among his nephews and nieces; the interest on the estate was insufficient to produce £50 per annum; it was held, on the construction of the will, that the deficiency could not be supplied out of the *corpus*. (*Hindle* v. *Taylor*, 20 Beav. 109; *Bague* v. *Dumergue*, 10 Hare, 447; *Phillips* v. *Gutteridge*, 32 L. J. Ch. 1; *Birch* v. *Sherratt*, L. R. 2 Ch. 644; *Mason* v. *Robinson*, L. R. 8 Ch. D. 411; *Selfox* v. *Lugden*, Johns. 234; *Gee* v. *Mahood*, L. R. 11 Ch. D. 891.)

We think that a careful study of all the cases will show the existence of the distinction here pointed out; that is to say: where the terms of the will show the intention of the testator to be, that, at the death of the annuitant, the entire fund set apart for the payment of the annuity shall pass to those who are to take after the death of the annuitant, then the *corpus* cannot be drawn upon to make up deficiencies in the annuity; the terms of the will in the case at bar show such an intention on

the part of the testator; but where the will provides, that the *residue* of the fund shall go to those who are to take after the death of the annuitant, or where it provides, that the fund shall be paid over "subject to" the payment of the annuity, or "after the payment" of the annuity, then the *corpus* will be liable for arrearages; there is no such provision in the will in the case at bar.

A will should be so construed as to give effect, if possible, to every part of it. To divide and partition the estate is a duty as much enjoined upon the trustees as the duty of paying an allowance to the widow. The division, which is directed to be made, is not a division of the residue of the estate after supplying deficiencies in the annuity; nor is it a division of the estate subject to the charge of the annuity. The division directed to be made is of the entire estate. There could not be a division of the entire estate, if a part of it had been exhausted in the payment of the allowance to the widow.

If the *corpus* of the present estate can be resorted to for the purpose of making up accruing deficiencies in the monthly or yearly allowance of the widow, then, in case she should live long enough, the whole of the capital might be exhausted and nothing would be left either for her or to be divided among the children. Such a result was manifestly not intended by the testator. In *Baker* v. *Baker*, 6 H. L. Cas. 616, the lord chancellor said: "According to the construction which is contended for, on behalf of the widow, this strange state of things would arise, that, supposing her life to continue for many years, the provision, which was clearly intended for her by the will, might, in the course of time, by appropriating annually a portion of the *corpus* of the property, be utterly annihilated, and she would be left without any provision at all." So also in *Delaney* v. *VanAulen*, *supra*, the Court of Appeals of New York said, in reference to a construction which would take from the fund itself to make up a deficiency of annual avails: "Such a course

might, in time, utterly annihilate the *corpus* and the beneficiary be left without any provision at all; and,  *  *  * therefore, nobody could suppose that such an intention could have existed in the mind of the testator."

For the reasons stated we are unable to agree with the conclusion reached by the learned judges of the circuit and Appellate Courts.

Accordingly, the judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*