## Watson's Estate

Before Keller, P. J., Boyer, J., and Holland, P. J., thirty-eighth judicial district.

*Thomas Ross* and *Saul, Ewing, Remick & Saul* for accountant.

*Thomas Ross* for Cornelia Watson, beneficiary.

*Vanartsdalen & Biester* and *Duane, Morris & Heckscher*, for exceptants.

BOYER, J., June 22, 1937. — The exceptions filed to the schedule of distribution raise no questions of fact but relate entirely to the interpretation of testator's will and codicils. Testator, Henry W. Watson, was a lawyer and United States Congressman. He died on August 27, 1933, a resident of Bucks County, leaving a will dated December 23, 1926, and three codicils thereto, the last thereof being dated May 16, 1932. The will, together with its codicils, was probated in the Register of Wills Office of Bucks County on August 30, 1933. The Pennsylvania Company for Insurances on Lives and Granting Annuities, hereinafter referred to as "The Pennsylvania Company", was named in the will as executor of the will and as trustee of the residuary estate. Letters testamentary were granted to the named executor, and a settlement of its accounts was duly filed and confirmed. Thereafter the executor filed a proposed schedule of distribution with notice to all the parties in interest. To this schedule exceptions were filed by various beneficiaries. These exceptions raise the questions now before the court.

The original will, covering approximately five typewritten pages, was carefully drawn and in general provided a detailed, logical, well-formulated plan of distribution of the decedent's estate. For the purposes of this opinion it is not necessary to refer to its provisions in

detail or to refer specifically to the manner in which the various exceptants are interested in the schedule of distribution. The first eight items provide for a number of specific bequests, among them being gifts to servants, bequests of chattels, bequests in trust for maintenance of burial lots and for church maintenance, the devise of a dwelling house, etc. The ninth, tenth, eleventh, and twelfth paragraphs provide for the bequest of the general residue of the estate to The Pennsylvania Company to hold in trust forever, to invest the same and pay the income as directed in those sections of the will. The ninth paragraph provides for the payment of $1,000 per annum out of the income from the residuary estate to Jean P. G. Hancock, and after the death of Jean P. G. Hancock to testator's stepdaughter, Janet R. Ball, for life, and then directs that it shall become a part of the final "residuary estate". The tenth paragraph bequeaths $500 annually out of the income to Upton H. White for life, thereafter to the said Janet R. Ball for life, and then directs that it shall become a part of the final residue. The eleventh paragraph provides for the payment of all the residue of the income from the residuary estate to testator's widow, Cornelia Watson, for her natural life, and after her death, $10,000 of the income annually to Janet R. Ball for life. It also provides that after the death of the widow the surplus of income, and after the death of the last life tenant all the income, shall be paid to the Protestant Episcopal Church for the support of the Diocesan Church of St. Mary without limitation as to time. The twelfth paragraph names The Pennsylvania Company as "executor of and trustee under" the will, defining its powers and duties in detail. The first and second codicils are not material to the questions in issue, each containing additional specific bequests or increases of income.

The third codicil, under which the legal questions arise, provides as follows:

"*First.* Under the provisions of my last Will and Testament and the Codicils thereto, I have provided for cer-

tain bequests and annuities. I now direct that my *Trustee* pay over unto my wife, Cornelia, not less than the annual sum of Twenty-five Thousand Dollars ($25,000), for life, free and clear of all taxes and other deductions. Should the value of my estate have depreciated to the extent that this payment cannot be made without reducing the other payments provided in my Will, I direct that all such other payments be reduced accordingly *for such period of time as may be necessary* until after the death of my said wife. This provision is not intended to reduce the amount payable to my wife under the terms of my Will and Codicils, but to assure to her the receipt of this minimum sum.

"*Second.* In all other respects I hereby ratify, republish and confirm my said Will and Testament dated December 23, 1926, and codicils thereto." (Italics supplied.)

It is the contention of the widow, and the schedule of distribution is based on the theory, that any deficiency in the income of $25,000 payable to the widow is to be taken from the principal of the estate. The schedule of distribution makes no provision for the payment of any legacies whatsoever, excepting to the widow, but at page 8 contains the following note: "The payment of all pecuniary legacies under the will and codicils are postponed in accordance with the first paragraph of the third codicil of the will." On page 24 of the schedule of distribution the following item is entered:

"Amount transferred from Principal Account, being the difference between $31250, 1¼ years allowance 8/27/33 to 11/27/34 @ $25,000 per annum payable to Cornelia Watson in accordance with the first paragraph of the third codicil to the will, and the net income earned by the estate $12378.54".

Exceptions have been filed to these two items specifically. It is the contention of exceptants that only the bequests of income from the residuary estate can be used to make up the deficiency in the widow's income, and that all other bequests, whether absolute or in trust, are now

payable in full to the respective legatees or trustees. The determination of these questions depends upon the interpretation of the third codicil to the will.

It is apparent that this will must be construed by its own terms, that is, the intention of the testator must be ascertained from the four corners of the will. The principles of construction are of little value in this case and should not be invoked unless his intention cannot otherwise be determined. Probably the only principle of assistance in this case is the rule that "Where a will and codicil are to be construed, the rule is well settled, that they must be regarded as parts of one and the same instrument, and that the codicil is not to be allowed to vary or modify the will, unless such was the plain and manifest intention of the testator. . . .

" 'The clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations. Such directions are to be so construed as to support the testator's clearly announced main intention' ": Sigel's Estate (No. 1), 213 Pa. 14, 16-17; see also Bissell's Estate, 302 Pa. 27.

The original will contained a very clear and complete plan of distribution of testator's estate. The third codicil modifies the provisions as to the widow's income by attempting to provide a minimum income. So far the codicil is clear in its purpose and intent, but when testator undertakes to provide a method of securing such a minimum income, he becomes vague and ambiguous. Had he given no directions whatever for the method of raising such minimum income, it might possibly have been construed as the granting of an annuity payable out of the principal of the residuary funds. Even this may be doubtful under the law of this country as distinguished from the English rule; the former being that the presumption is against making up deficiencies from the corpus of the estate unless the will shows such intent, while the English rule seems to be the reverse: 2 R. C. L. 8, §13; Einbecker

et al. v. Einbecker, 162 Ill. 267, 44 N. E. 426; Irwin, Admr., v. Wollpert et al., 128 Ill. 527, 21 N. E. 501; De Haven v. Sherman et al., 131 Ill. 115, 22 N. E. 711; Delaney v. Van Aulen, 84 N. Y. 16. That question, however, becomes merely academic because our testator specifically directs from what other legacies any deficiency shall be supplied. We cannot go beyond his directions and provide funds from any other source than those which he has indicated.

The codicil provides: "Should the value of my estate have depreciated to the extent that this payment cannot be made without reducing the other payments provided in my will, I direct that all such other payments be reduced accordingly". To what "other payments" does testator refer? For the answer to this question we must examine the entire will and codicil. The first sentence of the codicil appears to be an introductory statement intended to indicate what funds or legacies he has in mind to be affected by the codicil. He states that he has provided for "certain bequests and annuities." It appears to us that a reasonable construction of this language is that he intends to say that he has provided for two types of legacies, namely, specific bequests and annuities or incomes. It is significant that, although he says he has provided for "annuities," nowhere in his entire will has he used the word "annuities". The terms that he has used for anything resembling annuities are "income" and "payments". It is apparent, therefore, that testator uses the word "annuities" as synonymous with "payments of income". The introductory clause could, therefore, be stated as follows: "I have provided for certain pecuniary bequests and also for certain payments of income." Looked at in this light, the introductory phrase seems to have some purpose and meaning, namely, that he makes a distinction between these two classes of legacies and proposes to make some change as to one of them.

The next significant, and perhaps the controlling, feature of the codicil is that testator speaks to his trustee

and not to his executor. He directs what his trustee shall do, presumptively after the duties of the executor have been completed and the funds are held by the fiduciary in the capacity of trustee. The trustee as such never held and has no authority to hold, control, or distribute any part of the estate excepting the general residue from which the various incomes are to be raised. His first direction to his trustee is to pay to his wife the annual sum of $25,000. He further provides that if the income is insufficient the other payments shall be reduced accordingly. The clear inference is that the trustee shall transfer to the widow other payments of income which the original will had bequeathed to other legatees without condition or reduction. How could the trustee reduce other payments with which it had nothing to do and which were not in its hands?

Further light is thrown on the question of what "payments" testator intended should abate by a study of his use of the word "payments" throughout his will. He first uses the word in the ninth item of the will when he directs that "the said payments" (Jean Hancock's $1,000 income from the residue) shall be made to Janet Ball. In the tenth item he directs that "the said payments" (Upton White's $500 income) shall be made to Janet Ball. In the eleventh item, second paragraph, he directs his trustee, after the death of his wife, to pay $10,000 annual income from the residuary estate in semiannual "payments" to Janet Ball. In the first codicil, second item, he increases Janet Ball's $10,000 income to $12,000 in semiannual "payments". In the third codicil he uses the word twice as already indicated, once clearly referring to incomes. Altogether he uses the word "payments" six times in his will and codicils. In the first five of these he clearly refers to income raised from the residuary estate. The conclusion is inescapable that, when he used the same word a sixth time and in the same sentence with its use as designating widow's income, he must again have meant "payments" of income from the residuary estate.

In the third place, it must have been apparent to testator that it would be impossible to determine the sufficiency or insufficiency of the income from the residuary trust estate to raise the specified sum annually until after the general estate was fully settled and distributed. Testator was a lawyer and may be presumed to have known the length of time within which estates are to be settled and the time when interest begins to run on specific legacies not paid. This in itself is sufficient to indicate that he did not have in mind the making up of any deficiencies of income out of the general funds of the estate, which ordinarily would be distributed long before any deficiency could be ascertained. For this reason, as well as the fact that the directions are given to the "trustee" instead of to the "executor", we conclude that the codicil has no application to specific bequests or trusts created by the will other than the residuary estate.

The final and probably the most conclusive indication that testator did not intend deficiencies of the widow's income to be paid out of the corpus of the estate or out of the principal of the residuary fund is his direction that all such other payments be reduced "for such period of time as may be necessary until after the death of" his wife. If taken as referring to other payments of income out of the residuary estate, the provision is sensible and feasible. On the other hand, to construe it as referring to principal reduces it to an absurdity. Clearly a principal sum cannot be reduced "for such period of time as may be necessary." To reduce principal is to reduce it forever, and amounts to a destruction of the fund instead of a temporary reduction. Certainly a court would not be justified in putting such a construction upon the will as to make its provisions ridiculous or impossible.

We therefore conclude that the skillfully drawn and clearly expressed will is not to be set aside and destroyed by the ambiguous, poorly drawn third codicil and that it was testator's intention as expressed in the last codicil that the incomes from the residuary fund held by the

trustee should abate, or be appropriated annually to an extent sufficient to allow an income of $25,000 to the widow. Therefore, all the specific legacies and pecuniary bequests, whether absolute or in trust, must be paid immediately to the respective beneficiaries and trustees under the will and the codicils, the executor thereafter retaining the balance or residue of the estate for investment, etc., in its capacity as trustee.

Now, June 22, 1937, all the exceptions to the schedule of distribution are sustained, and the executor is directed to file a new schedule of distribution in accordance with this opinion.