THE STATE BANK OF HAVANA, Trustee under the Last Will and Testament of Jacob H. Cordes, Deceased, Plaintiff-Appellee, v. HARRY CORDES *et al.*, Defendants-Appellees (The Mason District Hospital, Defendant-Appellant).

Fourth District' No. 4—87—0779

Opinion filed April 14, 1988.

526

Steven B. Morgan, of Perbix & Morgan, of Havana, for appellant.

Edward P. Miller, of Havana, for appellee State Bank of Havana.

Judith N. Lozier, of Law Offices of Alan D. Tucker, P.C., of Havana, for appellees Harry Cordes and Ruth Cordes.

JUSTICE KNECHT delivered the opinion of the court:

This case involves the question of whether a will is so ambiguous as to require construction by the court, and, if so, whether the will permits invasion of the corpus of a trust established by the will in order to obtain sufficient funds to meet the needs of the principal beneficiaries of the trust. We hold the circuit court properly construed the will and ruled the needs of the principal beneficiaries may be satisfied from the trust corpus insofar as the trust income is insufficient for that purpose.

The decedent, Jacob H. Cordes, died on February 18, 1982, and left a will dated April 1, 1977. In addition to making various specific bequests, the will creates a trust consisting of the residue of Cordes' estate. A portion of the trust is to be utilized for the support of Cordes' sister, Katherine E. Davis, who is now deceased, and of Cordes' brother and sister-in-law, Harry H. and Ruth Cordes (the beneficiaries). The portions of the will relating to this trust provide:

"FOURTH:

\* \* \*

(2) The Trustees shall take possession of all property which I may own at the time of my death, real, personal or mixed of whatsoever nature wheresoever situated including proceeds of sale of property described in Paragraph 1 and shall hold said property subject to the powers herein granted for the following purposes:

(a) I direct the Trustees to invest the proceeds of my estate, to collect and invest the income derived from the Trust Estate and from such income the Trustees shall pay the costs and expenses of the trust which are normally payable out of income including reasonable compensation of the Trustees; the remainder of the income hereinafter called net income shall be distributed as is hereinafter provided.

(b) The Trustees are authorized and empowered to manage, care for, improve, protect, control, mortgage, pledge, sell for cash or on credit, partition, exchange or otherwise deal with the Trust Estate or any part thereof, in its [sic] discretion, in

any and every way in which any owner having unrestricted ownership and control thereof could manage, care for, improve, protect, control, mortgage, sell, partition, exchange or otherwise deal with the same.

(c) The net income derived from said Trust Estate after payment of costs and expenses of this trust shall be paid, a part of same to my sister, MRS. KATHERINE E. DAVIS and a part to my brother, HARRY H. CORDES and his wife, RUTH CORDES, as they require for their personal needs, comfort and requirements which may exceed their own income. It shall be the duty of the Trustees to inquire or investigate and find out about their needs and take the necessary steps to alleviate any needs by providing from the Trust Estate.

\*\*\*

At the earliest possible date when it can be determined what the approximate balance of the Trust Estate shall be after all the above conditions have been met, the remainder of the Trust Estate shall be distributed to the Mason District Hospital, Havana, Illinois, or its successor serving a similar purpose, for the improvements [sic] of equipment in the hospital which are of special use in treating and caring for elderly persons."

On August 20, 1987, the State Bank of Havana (bank), which is the trustee of the trust established by Cordes' will, filed a complaint for construction of the will. The complaint alleged the bank was making monthly payments of $2,680 to the beneficiaries. Due to a decrease in the trust's net annual income, continued payment of this amount would be impossible absent invasion of the principal of the trust. The complaint alleged by reason of the ambiguous language and terms of Cordes' will, an actual controversy existed between the trustee, the beneficiaries and the remainderman. The complaint requested construction of Cordes' will in the following particulars:

"A. Whether the term 'net income,' as used in paragraph Fourth, subparagraph 2c) [sic] of the will, should be strictly construed to mean that only the 'net income' of the trust estate may be used by the trustee to provide for the needs of the trust beneficiaries.

B. Whether the language '\*\*\* It shall be the duty of the Trustees to inquire or investigate and find out about their needs and take the necessary steps to alleviate *any needs* by providing from the Trust Estate \*\*\*' (emphasis added) should be liberally construed to mean that the testator intended to provide for all the needs of the trust beneficiaries and to invade

the principal if it were necessary to provide for those needs."

As an affirmative defense, Mason District Hospital (hospital) alleged there is no ambiguity and hence nothing to be construed in Cordes' will. On the same grounds, Mason District Hospital also filed a motion to dismiss the complaint for construction of Cordes' will.

At a hearing held September 22, 1987, the circuit court took the hospital's motion to dismiss under advisement. James Frazee, the bank's trust officer, testified on behalf of the bank. He stated the current monthly payment to the beneficiaries from the trust established by Cordes' will is $2,680. The trust corpus is approximately $340,000, which presently produces a net annual income of approximately $25,000. At the time of the hearing, interest rates were lower than previously, and although there was beginning to be a rebound in interest rates, the amounts being paid to the beneficiaries still exceeded the trust income. On the basis of an annual income of $25,000 or less, approximately $7,000 per year has to be taken from the trust principal in order to continue payments to the beneficiaries at their present level.

On cross-examination by counsel for the hospital, Frazee testified the maximum annual income generated by the trust assets was approximately $35,000. There were times when not all of the trust's net income was distributed to the beneficiaries.

On cross-examination by the guardian *ad litem* for the beneficiaries, Frazee stated that during periods when the trust income exceeded payments to the beneficiaries, the excess income was added to the trust corpus.

The circuit court held subparagraph 2(c) of the fourth paragraph of Cordes' will is ambiguous and uncertain and requires further construction. The court also held Cordes' intention was to provide for the "personal needs, comfort, and requirements" of the beneficiaries. In construing Cordes' will, the court particularly relied on the usage of the term "Trust Estate" in the last subparagraph of the fourth paragraph to describe both the principal and any undistributed net income of the trust at the time its distribution to the hospital and the use of the same term in subparagraph 2(c) of the fourth paragraph in directing the trustee to "alleviate any needs" of the beneficiaries "by providing from the Trust Estate." The court ordered the bank "to inquire and investigate as to the personal needs, comfort and requirements" of the beneficiaries and to provide for the same after considering the beneficiaries' other income. The court further ordered the bank to invade the principal of the trust in order to accomplish this objective in the event the trust's income proved insufficient therefor.

We first consider whether the relevant provisions of Cordes' will are ambiguous to the extent judicial construction is required. Mason District Hospital asserts there is no ambiguity in this will, because Cordes clearly intended to give the trust's net income to the beneficiaries and the corpus to the hospital, and there are no provisions which expressly or impliedly permit invasion of the trust corpus.

The beneficiaries assert it is unclear from the language of the fourth paragraph of the will whether Cordes meant to limit the funds available to satisfy the beneficiaries' needs to the trust's income or whether he intended to meet all their needs by permitting the use, if necessary, of funds from the trust corpus. They also assert, contrary to the arguments of Mason District Hospital, this case does not involve the issue of a gift by implication, but instead the question is merely which funds may be charged with the disbursements used to meet their needs.

■ Courts will assume jurisdiction to construe wills where there is doubt or uncertainty as to the rights and interests arising thereunder, but may not construe wills which are neither ambiguous nor uncertain. A bare allegation that a question requiring construction of a will exists, where the record demonstrates the nonexistence of such question, is insufficient to confer jurisdiction to construe a will. (*Jusko v. Grigas* (1962), 26 Ill. 2d 92, 186 N.E.2d 34.) In the specific context of trusts created by wills, "[a] trustee who is honestly and reasonably puzzled as to the existence of a power to advance [the trust] principal may obtain advice from equity." G. G. Bogert & G. T. Bogert, The Law of Trusts & Trustees §812, at 251 (rev. 2d ed. 1981).

■ We conclude the portion of Cordes' will which creates a trust is sufficiently ambiguous to require judicial construction. The will provides the net income of the "Trust Estate" is to be utilized to satisfy the beneficiaries' personal needs, but further provides the trustee is to alleviate any of the beneficiaries' needs by providing from the "Trust Estate." The remainder of the "Trust Estate" is to be distributed to Mason District Hospital upon termination of the trust. Nowhere in the will is the term "Trust Estate" specifically defined. These provisions create a sufficient degree of uncertainty concerning whether the trust corpus may be utilized to provide for the beneficiaries' needs to require construction of Cordes' will.

The cases upon which Mason District Hospital relies in support of its contention Cordes' will is not so ambiguous construction is required are distinguishable. In *Jusko*, the court held the will at issue was sufficiently ambiguous to require construction. In both *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 296 N.E.2d 747, and *In re Estate of*

*Blansett* (1975), 28 Ill. App. 3d 552, 328 N.E.2d 593, a husband and wife executed joint and mutual wills which left their entire estate to the survivor. The wills also provided for disposition of the estates upon the simultaneous deaths of the testators, but made no provision for disposition of the estates upon the death of the survivor in the event simultaneous deaths did not occur. In both of these cases, the courts held the wills were nonambiguous and thus did not create gifts by implication which would become effective upon the death of the survivor in the event the testators did not die simultaneously. In neither of these cases did the will contain ambiguities and uncertainties of the type present in Cordes' will.

We next consider whether the circuit court properly interpreted Cordes' will as permitting invasion of the trust corpus in order to satisfy the needs of the beneficiaries which exceeded the beneficiaries' other income to the extent the trust income is insufficient for that purpose. The Mason District Hospital contends the language of the will clearly limits the funds which may be advanced for the support of the beneficiaries to the trust's income. It asserts the second sentence of subparagraph 2(c) of the fourth paragraph of the will does nothing more than impose upon the trustee the duty to investigate the beneficiaries' circumstances in order to ensure they receive payments from the trust income only in the event they have a genuine need for such payments. The Mason District Hospital contends Cordes used the term "Trust Estate" in this sentence because the payments to the beneficiaries derive from the trust as opposed to a specific bequest or other source mentioned in the will. The hospital argues if Cordes had intended the trust corpus to be available for the support of the beneficiaries, he need only have included the words "alleviate any needs by providing from the corpus of the trust estate" in the last sentence of subparagraph 2(c) of the fourth paragraph.

The hospital further contends permitting payments to the beneficiaries to be made in part from the trust corpus would violate the principle that a court may not deprive a remainderman of a trust corpus which is an unlimited or unconditional gift to the remainderman under the terms of the will, even if the trust income is insufficient to provide payments to beneficiaries required by other provisions of the will. They assert it would be illogical to impute to Cordes an intention the beneficiaries be permitted to invade the trust corpus, when as a result of the beneficiaries possibly having no need for the trust income, the principal conceivably could have been distributed to the hospital during the beneficiaries' lifetimes.

The beneficiaries assert the language of Cordes' will, construed as

a whole, reveals Cordes primarily intended the beneficiaries' needs should be met from the trust funds, even if that means invading the trust corpus in order to satisfy those needs. They maintain there is no indication Cordes intended to limit the funds available for the support of the beneficiaries to the trust's income, and it would not seem to have been Cordes' intention to countenance a situation in which the beneficiaries would want for the necessities of life in order that the trust corpus could be preserved for an institutional beneficiary.

The bank contends the provision in the last sentence of the last subparagraph of the fourth paragraph of Cordes' will, to the effect the Mason District Hospital is to receive the trust remainder after "all the above conditions" have been fulfilled, indicates Cordes intended the hospital receive only the amount of trust funds remaining after satisfaction of all of the beneficiaries' income needs. The bank also argues the extensive authority conferred upon the trustee to manage the trust property is inconsistent with a conclusion Cordes intended the trustee to maintain a distinction between the trust income and the trust corpus and to keep the corpus intact for the remainderman, as is Cordes imposing upon the trustee the duty of investigating the needs of the beneficiaries and alleviating such needs by providing from the trust estate. The bank asserts, by inserting the latter provision in the will, Cordes intended both the trust income and principal to be available to satisfy the beneficiaries' needs. In support of this contention, the bank notes "Trust Estate" is used in the last subparagraph of the fourth paragraph of the will to refer to both the principal and trust income remaining undistributed upon termination of the trust. Finally, the bank asserts, in view of the language of the relevant provisions of Cordes' will, the trust here at issue is not a spendthrift trust under terms of which the beneficiaries are absolutely prohibited from receiving more than the trust's net income.

■ In *Einbecker v. Einbecker* (1896), 162 Ill. 267, 278-79, 44 N.E. 426, 430, the supreme court considered the situation in which a trust's income is insufficient to cover amounts due individuals who are entitled to receive annuities or other payments from the trust income. The court stated the test for determining whether, in such circumstances, these payments may be made in part from the trust corpus is as follows:

> "[W]here the terms of the will show the intention of the testator to be, that, at the death of the annuitant, the entire fund set apart for the payment of the annuity shall pass to those who are to take after the death of the annuitant, then the *corpus* cannot be drawn upon to make up deficiencies in the annu-

ity; \*\*\* but where the will provides, that the *residue* of the fund shall go to those who are to take after the death of the annuitant, or where it provides, that the fund shall be paid over 'subject to' the payment of the annuity, or 'after the payment' of the annuity, then the *corpus* will be liable for arrearages \*\*\*.'' (Emphasis in original.) (162 Ill. at 278-79.)

In *Einbecker*, the will provided that upon the death of the decedent's wife, who during her lifetime was to be paid a specified sum "out of the moneys so arising from my estate":

" '[T]he property and securities retained by my trustees for the purpose of insuring the payment of the allowance to her, as above stated, shall also be partitioned and divided between all my children, in the manner and at the time above set forth.' " (*Einbecker*, 162 Ill. at 269, 44 N.E. at 427.)

Because the will directed division of the decedent's entire estate among named beneficiaries upon fulfillment of specified conditions and because payments to the widow from the principal might exhaust the entire principal, leaving nothing for the decedent's children, the court held shortfalls in the payments due the widow could not be paid from the trust corpus.

In the present case, the last subparagraph of the fourth paragraph of Cordes' will clearly specifies Mason District Hospital is to receive "the remainder of the Trust Estate," after "all the above conditions have been met." One of the applicable conditions is the alleviation of any needs of the beneficiaries. On the basis of the rule set forth in *Einbecker* and the testamentary language bequeathing to Mason District Hospital the remainder of the trust subject to the alleviation of the beneficiaries' needs, we must hold the corpus of the trust established by Cordes' will is chargeable with any amounts by which the trust income is insufficient to meet the beneficiaries' needs for which the trustee is obligated to provide.

Our conclusion the trustee may invade the trust corpus in order to provide for the needs of the beneficiaries is also supported by the language of subparagraph 2(c) of the fourth paragraph of Cordes' will considered in view of applicable decisions from other jurisdictions. The subparagraph just mentioned provides the trust's net income is to be paid to the beneficiaries as they require for their personal needs, comfort and requirements which may exceed their own income, but further requires the trustee to determine the beneficiaries' needs and to "take the necessary steps to alleviate any needs by providing from the Trust Estate." Cases from other States hold somewhat similar testamentary language implies a power to invade the trust corpus if

necessary in order to satisfy the beneficiaries' needs.

For instance, in *McGill v. Young* (1908), 75 N.H. 133, 71 A. 637, the decedent's will established a trust for the support of his son. The portion of the will providing for the support of the son stated the trustee shall support the son out of the net income of the estate. However, the will further provided the trustee shall " 'pay *** to my son *** all the money that may be actually necessary for his comfort and support in sickness or health, at such times and such places as may be expedient under all circumstances, relative to justice ***.' " (75 N.H. at 134, 71 A. at 637.) Also, the trustee was to " 'look after' " the decedent's son " 'with a diligent exercise of [his] best powers relative to good care and no *abuse*.' " (Emphasis in original.) (*McGill*, 75 N.H. at 134, 71 A. at 637.) The court held by directing the trustee to use what money was actually necessary in order to properly care for his son, the decedent likely meant what he said. Since the trust income was inadequate for that purpose, the trustee was obligated to use as much of the trust corpus as was necessary for the support of the decedent's son.

Also, in *Gluckman v. Roberson* (1934), 115 N.J. Eq. 522, 174 A. 488, the will in issue required the executors, " 'out of the income of my estate to pay to my wife a weekly allowance of forty dollars and such other sum and sums as may be necessary during the term of her natural life ***.' " (*Gluckman*, 115 N.J. Eq. at 523, 174 A. at 489.) The residue of the estate was to be given to charity.

The court held the testator's primary purpose was to provide support to his widow during her lifetime. It was apparent the decedent did not contemplate or intend to create a situation where his widow would become an object of charity in order that his estate remain unimpaired in order to dispense charity to strangers. An opposite conclusion would require a forced construction to the effect the testator intended to care for his widow only as long as there was income available for such purpose. In reaching its decision, the court also placed reliance on testamentary language giving the trustees power to sell, convey or mortgage the decedent's real estate, considered in view of the absence of language vesting the trustees with general powers of investment or reinvestment. The court held the likely reason for such language was the widow's probable necessity if the trust income failed.

The testamentary language at issue in *McAfee v. Thomas* (1927), 121 Or. 351, 255 P. 333, bequeathed to the decedent's son, who was an epileptic, all of the net income derived from the decedent's property, with the property, subject to the son's life estate, to be devoted

to charitable purposes upon the son's death. The trustee was given full power to manage, control and secure income from the trust property in any manner he deemed proper, and to pay the same for the support and maintenance of the decedent's son as he deemed proper and advisable. The income from the trust estate proved insufficient for the support of the son.

In holding the trustee properly expended the principal of the trust for the support of the son, the court observed if conditions had remained substantially as the decedent contemplated them, there would have been no question concerning construction of the will. The court also noted if the trust income had exceeded the son's requirements, it would have gone to the trust corpus. Thus, in the mind of the testator, there was no real difference between the trust's principal and income. The court also noted the trustees were not to sell or mortgage any of the testator's property after the son's death, but no such restriction was applicable during the life of the son. The court concluded, considering the will as a whole, it was the decedent's manifest intent his son be properly cared for, and it was improbable the decedent intended to limit the trustee to utilization of only the trust income for the support of his son if at any time the trust income was insufficient for that purpose.

In the case at bar, as in the three cases just mentioned, it was the decedent's manifest intent to provide for the reasonable needs of the beneficiaries during their lifetime. It is apparent Cordes did not intend the beneficiaries to enjoy a less than comfortable life-style in order to preserve the trust corpus for the benefit of persons unrelated to him. Rather, Cordes' will clearly directs the trustee "to alleviate any needs [of the beneficiaries] by providing from the Trust Estate."

Our conclusion the bank may, if necessary, utilize the trust corpus to provide for the needs of the beneficiaries is also consistent with the principle some effect should, if possible, be given to every part of a will. (*Einbecker*, 162 Ill. 267, 44 N.E. 426.) A construction of Cordes' will which would limit the funds available to provide for the beneficiaries' needs to the trust's income would render the words "and take the necessary steps to alleviate any needs by providing from the Trust Estate" which appear in subparagraph 2(c) of the fourth paragraph of Cordes' will superfluous and of no effect. The construction of the will which we adopt gives some meaning to these words.

An extended explanation of why the cases upon which the hospital principally relies (*Einbecker*, 162 Ill. 267, 44 N.E. 426; *Tree v. Rives* (1952), 347 Ill. App. 358, 106 N.E.2d 870; *Chicago Title & Trust Co.*

*v. Morey* (1935), 281 Ill. App. 219) do not support the view the trustee is limited to the trust income in providing for the beneficiaries' needs would unnecessarily lengthen this opinion. Suffice it to say none of these cases dealt with a combination of testamentary language such as that present in paragraph four of Cordes' will which bequeaths the trust residue to a remainderman subject to the fulfillment of certain conditions and requires the trustee to take steps to alleviate any needs of the beneficiaries by providing from the trust estate.

■ The hospital also refers to section 168 of the Restatement (Second) of Trusts in support of its position as to this issue. The relevant portions of section 168 provide:

> "The court may permit or direct the trustee to apply income and principal from the trust estate for the necessary support of a beneficiary of the trust before the time when by the terms of the trust he is entitled to the enjoyment of such income or principal, if the interest of no other beneficiary of the trust is impaired thereby.
>
> \* \* \*
>
> d. <u>Where</u> <u>principal</u> <u>needed</u> <u>for</u> <u>life</u> <u>beneficiary</u>. The court will not permit or direct the application of the principal to the support or education of one beneficiary where by the terms of the trust income only is to be so applied, if the result would be to deprive another beneficiary of property to which he is or may become entitled by the terms of the trust, whether the interest of such other beneficiary is vested or contingent, unless such other beneficiary consents to such application.
>
> \* \* \*
>
> Even though there is a gift over on the death of the beneficiary, the court will authorize or direct an invasion of the principal for the necessary support of the beneficiary where the will indicates that the support of the beneficiary was the primary purpose of the testator, even though the testator did not in express terms permit the invasion of the principal." (Restatement (Second) of Trusts §168 (1957).)

In the present case, the testamentary language, considered as a whole, indicates Cordes' primary purpose in establishing the trust of which Mason District Hospital is the residuary beneficiary was to alleviate any reasonable needs of the main beneficiaries during their lifetimes. Therefore, Mason District Hospital has no basis for complaining of the trustee's satisfying the beneficiaries' needs with funds from the trust corpus to the extent the trust income is inadequate for that purpose.

The will of Jacob H. Cordes is ambiguous to the extent judicial construction was required. The circuit court properly resolved the ambiguity by holding the trustee may utilize the trust corpus to satisfy the needs of Harry H. and Ruth Cordes which exceed their other income insofar as the trust income is insufficient for that purpose.

The order of the circuit court is affirmed.

Affirmed.

McCULLOUGH and SPITZ, JJ., concur.