# HAWAIIAN TRUST COMPANY, LIMITED, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF GEORGE GALBRAITH, DECEASED, *v.* SAMUEL ROME, ET AL.

## No. 2499.

SUBMITTED JUNE 22, 1943.     DECIDED AUGUST 9, 1943.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF LE BARON, J., DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

This is a bill for instructions filed by the trustee under the will and of the estate of George Galbraith, deceased, late of Honolulu, Hawaii.

The testator died November 5, 1904, leaving a will and three codicils thereto, all dated January 21, 1904. At the time of his death he was and for many years prior thereto had been a resident of Honolulu. In said will and codicils the testator gave the balance, residue and remainder of his property (after various pecuniary legacies) as a trust estate to the petitioner as trustee, to be held in trust for as long a period as legally possible. The residuary devise

creating the trust contains the direction that sufficient of the annual income derived from said trust estate shall be devoted toward the payment of certain specified annuities free and clear of all taxes. Nineteen annuities were created, fifteen of which were to the annuitant for life and then to his or her heirs; four were for life only. It is also provided by the will and codicils that upon the final ending and distribution of said trust the trust funds shall be divided equally among those persons entitled at that time to the annuities. The validity of the trust thus created was sustained by this court in the case of *Fitchie* v. *Brown*, 18 Haw. 52, *aff'd* 211 U. S. 321. It was there held that the said trust would continue until twenty-one years after the death of the last survivor of the individual annuitants named or referred to and also that the surplus income over and above the part of the income necessary to provide for the payment of the annuities should be accumulated for distribution as part of the trust fund. The provisions of the will which provide for the payment of the annuities specified in said will and codicils, being the provisions which govern the determination of the issues raised, are quoted in the margin.[1]

---

1 "The balance, residue or remainder of my estate is to be placed in trust for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute.

"I hereby nominate and appoint The Hawaiian Trust Company, Limited, of Honolulu, Territory of Hawaii, as trustee of the aforesaid balance, residue or remainder of my estate and they are to devote sufficient of the annual income derived from the same toward paying the following annuities, which are to be free and clear of all taxes, unto the following persons mentioned, namely, [followed by list of annuities].

"All of the foregoing for life, and then to their heirs, save and excepted the last three persons, namely, * * * who are to receive only their life annuities and at their death all their interests to cease.

"On the final ending and distribution of the trust, the trust fund to be divided equally amongst those persons entitled at that time to the aforementioned annuities."

The extent to which the codicils revoked provisions of the will or made substitutions is immaterial. They do not affect the quoted excerpts from the will except that while the will contains no words of grant to the annuitants, the codicils contain appropriate words of grant.

Said will and codicils were admitted to probate by a judge of the circuit court of the first judicial circuit of the Territory on March 24, 1905. On April 14, 1909, the administration was concluded and the rest, residue and remainder of the estate of the testator was distributed to the present trustee.

Of the persons to whom the individual annuities created by said will and codicils are presently payable, there are, in addition to residents of Hawaii and elsewhere in the United States, nonresident aliens not engaged in trade or business in the United States and not having an office or place of business therein. The respondents include all the present owners of annuities whether as outright owners or owners for life or as assignees by way of security.

The United States Revenue Act of 1936[2] was in effect during the taxable years 1936 and 1937. The United States Revenue Act of 1938[3] was in effect, commencing with the taxable year 1938. The provisions of the United States Revenue Acts of 1936 and 1938, which provide for the taxation of trust estates for Federal income tax purposes, are set forth in sections 161 to 169, both inclusive. Section 162(b) of the Revenue Act of 1936[4] and also of the Revenue Act of 1938[5] provides that in computing the net income of a trust estate there shall be deducted the amount of the income of the trust estate for its taxable

[2] 49 U. S. Stat., c. 690, p. 1648.
[3] 52 U. S. Stat., c. 289, p. 452.
[4] 49 U. S. Stat., c. 690, p. 1706.
[5] Am. Rev. Act 1942, 56 U. S. Stat., c. 619, § 111(c).

year which is to be distributed currently by the fiduciary to the beneficiaries, but that the amount so allowed as a deduction shall be included in computing the net incomes of the beneficiaries.

On or as of November 5 of each of the years 1936, 1937 and 1938, the trustee paid to the respective persons entitled thereto the amounts of the annuities under said will and codicils, except that in each of said years it withheld and deducted, pursuant to the applicable provisions of Revenue Acts of the United States in respect to Federal income taxes then in effect, and paid to the proper tax authorities of the United States on account of the income taxes payable to the United States by nonresident, alien annuitants not engaged in trade or business therein and residing elsewhere than in the Dominion of Canada, ten per cent of the amounts of the annuities payable to such nonresident, alien annuitants and also, in the years 1937 and 1938, under like circumstances, it similarly deducted, withheld and paid to the proper tax authorities of the United States on account of the income taxes payable to the United States by nonresident annuitants not engaged in trade or business in the United States and not having an office or place of business therein and residing in Canada, five per cent of the amounts of the annuities payable to such nonresident, alien annuitants who resided in Canada. The trustee also proposes in subsequent years to similarly deduct, withhold and pay to the proper tax authorities of the United States on account of the income taxes payable to the United States by both such nonresident, alien annuitants similar percentages of the amounts of the annuities payable to them, unless otherwise instructed.

The Revenue Act of 1936 also provides, by section 211(a)[6] thereof, that in lieu of normal taxes or surtaxes

6 49 U. S. Stat., c. 690, p. 1714.

to which other persons are subject, there shall be levied, collected and paid for each taxable year for annuities or other fixed or determinable annual or periodical gains, profits and income received by nonresident aliens not engaged in trade or business within the United States and not having an office or place of business therein from sources within the United States a tax of ten per cent, but that such rate shall be reduced in the case of a resident of a contiguous country to such rate (not less than five per cent) as might be provided by treaty with such country. Section 211(a) of the Revenue Act of 1936 was amended by section 501(a) of the Revenue Act of 1937,[7] but in respect to matters that are immaterial to the issues. The provisions of section 211(a) of the Revenue Act of 1938 are identical in substance with the provisions of the same section of the Revenue Act of 1936, as amended as previously stated by the Revenue Act of 1937. On August 13, 1937 the rate of tax applicable to individuals residing in Canada who are not engaged in trade or business in the United States was reduced to five per cent.

By section 143(b)[8] of the Revenue Act of 1936 and also of the Revenue Act of 1938,[9] it is provided that fiduciaries having the payment of any annuities (to the extent that such annuities constitute gross income from sources within the United States) payable to nonresident, alien individuals not engaged in trade or business within the United States and not having an office or place of business therein shall withhold and deduct the tax against such nonresident, alien individuals on account of such annuities. Section 143(c) of the Revenue Act of 1936[10] and of the Revenue Act of 1938,[11] also provides that amounts

[7] 50 U. S. Stat., c. 815, pp. 813, 830.
[8] 49 U. S. Stat., c. 690, p. 1701.
[9] 52 U. S. Stat., c. 289, p. 512.
[10] 49 U. S. Stat., c. 690, p. 1702.
[11] 52 U. S. Stat., c. 289, p. 512.

so withheld and deducted shall be paid directly by the fiduciaries to the proper Federal tax officials.

The trustee, acting under the advice of counsel, takes the position that under the provisions of section 162(b) of the Revenue Act of 1936 and also of the Revenue Act of 1938, the trust estate is entitled to deductions in computing its net taxable income for Federal income tax purposes of the amounts of the annuities paid to the persons entitled to the same, and that the amounts of such annuities should be included in computing the net incomes of the persons who receive the same; the theory of the trustee in this regard being that the annuities payable in each year constitute a part of the income of the trust estate for such year which is to be distributed currently by the trustee to the beneficiaries, and in filing Federal income tax returns from time to time for said trust estate the trustee has shown and claimed deductions for the amounts of such annuities. The trustee contends that whether the trust estate is entitled to deductions for Federal income tax purposes for the annuities currently distributable pursuant to the provisions of the will and codicils and the related question of whether the amounts of such annuities should be included in computing the net incomes of the persons who receive the same, depend upon the interpretation of the will and codicils and particularly of the language of the residuary devise, and depend more specifically upon the determination of the question of whether the annuities are payable only out of the net income of the trust estate or are a charge upon the trust estate as a whole.

Counsel have advised the trustee to the effect: (a) that the provision of the will that the annuities should be paid "free and clear of all taxes" indicates the intent of the testator that the amounts of the annuities should not be diminished by reason of any taxes payable by the

trustee in connection with its ownership or administration of the trust estate, but does not indicate any intent of the testator that the amounts of the annuities should not be diminished by reason of any income taxes against the persons entitled to receive such annuities; (b) that the income taxes imposed by section 211(a) of the Revenue Acts of 1936 and 1938 are not taxes against the annuities but against the recipients of the annuities based upon the income received by them from sources within the United States; (c) that the provisions of section 143(b) of said Revenue Acts requiring the withholding and deduction of such taxes at the source are for administrative purposes only and in order to facilitate the collection of taxes; (d) that the annuitant beneficiaries of said trust estate who live in Hawaii or elsewhere in the United States and pay Federal income taxes on the annuities received by them (the amounts of which Federal income taxes are not deductible at the source) are not entitled to receive reimbursement from said trust estate for such income taxes payable by them; and (e) in conclusion that Federal income taxes on nonresident, alien individuals taxable under said section 211(a) on account of annuity payments made to them should have been and should be deducted from and paid out of the amounts of the annuity payments payable to such nonresident, alien individuals and should not have been and should not be paid out of the general funds of the trust estate.

The trustee requests an adjudication whether it was correct in withholding and deducting from the annuities payable in 1936, 1937 and 1938 to nonresident, alien, annuitant beneficiaries of the trust estate, taxable under section 211(a) of the Revenue Act of 1936 and of the Revenue Act of 1938, the taxes under said section 211(a) on account of their annuities; whether it should now pay the said nonresident, alien, annuitant beneficiaries the

amounts which were so withheld and deducted; and that it be instructed as to its duties with respect to the same problem as it will arise in future years. Such adjudication and request for instruction, in its opinion, requires a consideration of the provisions of the will and codicils of the testator and determination of the following questions: First, whether the annuities provided for in the will and codicils of the testator are payable only out of the net income from the trust estate or are a charge upon the said trust estate as a whole, and second, assuming that said annuities are payable out of the net income from said trust estate, whether the Federal income taxes under section 211(a) of the Revenue Acts of 1936 and 1938 against nonresident, alien annuitants taxable under said section 211(a), which income taxes are required to be withheld and deducted by the trustee and paid directly by it to the Federal tax authorities, should have been and should be deducted from and paid out of the annuities payable to such nonresident, alien annuitants or should have been and should be paid out of the general funds of said estate.

Upon the first question propounded, those of the respondent beneficiaries who are nonresident aliens and taxable under the provisions of section 211(a) of the Revenue Act of 1936 and the Revenue Act of 1938, take the position that the annuities provided for in said will and codicils are a charge upon the trust estate as a whole and are not payable exclusively out of the net income from said trust estate. On the second question propounded, they take the position that the will expressly provides that all annuities are to be "free and clear of all taxes"; that any income taxes against any annuitant beneficiaries of the trust estate under section 211(a) of the Revenue Acts of 1936 and 1938 required to be withheld and deducted at the source, should not have been and should not be de-

ducted from or paid out of the annuities payable to said annuitant beneficiaries taxable under section 211(a), but should have been and should be paid out of the general funds of the trust estate. They also claim reimbursement of the amounts deducted and withheld by the trustee.

· Those of the annuitant beneficiaries who are residents of Hawaii and elsewhere in the United States and who are taxable for Federal income tax purposes otherwise than under section 211(a) of the Revenue Acts of 1936 and 1938, take the same position as the trustee.

All of the facts heretofore set forth in the statement of the case were alleged in the bill of complaint and admitted by the answering respondents, including the allegation that at the date of the execution of the will and codicils the net income from the property owned by the testator, after the deduction° from such property of the amounts of the pecuniary legacies provided for in said will and codicils, was substantially in excess of the amounts which would have been necessary to be used annually to pay the annuities provided for in said will and codicils.

All of the gross income from said trust estate is and at all times has been obtained from sources within the United States.

As far as the record discloses the hearing before the circuit judge was upon the pleadings, no evidence having been offered by any of the parties. The circuit judge held that the trustee was correct in withholding and deducting from the annuities payable in 1936, 1937 and 1938 to nonresident, alien annuitants of said trust estate not engaged in trade or business within the United States and not having an office or place of business therein, the amounts of the taxes under section 211(a) of the Revenue Acts of 1936 and 1938 on account of their said annuities and the trustee should not now pay to said nonresident, alien

beneficiaries the amounts which were so withheld and deducted, and the trustee should continue to deduct and withhold from such annuities the said taxes as it is required to do so from time to time by the Federal Revenue Acts.

A decree in conformity with the decision of the circuit judge was entered and those of the respondents who are nonresident aliens appealed. Subsequent to submission of the appeal the parties, upon request of the court, filed an agreed statement of facts relevant to the issue of the intention of the testator in respect to the source of payment of the annuities created by the will and codicils, and such as are material to that issue have been considered.

By section 11 of the Revenue Acts of 1936[12] and 1938,[13] all persons ordinarily are subject to a normal tax upon net income in excess of the credits against net income provided in section 25 and by section 12 of the same Acts,[14] and to a surtax upon net income in excess of credits against net income provided in section 25(b). By the provisions of section 211(a) of the same Revenue Acts "in lieu of the tax imposed by sections 11 and 12 * * * every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein" is subject to a tax of 10 per cent, "except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by treaty with such country" upon the amount received "from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determina-

---

12 49 U. S. Stat., c. 690, p. 1653.

13 52 U. S. Stat., c. 289, p. 452.

14 Rev. Act 1936, p. 1662; Rev. Act 1938, p. 466.

ble annual or periodical gains, profits, and income * * * ."

If the amounts of the annuities payable to the non-resident, alien beneficiaries were "annuities * * * or other fixed or determinable annual or periodical gains, profits, and income," within the meaning of the provisions of section 211(a) of the Revenue Acts of 1936 and 1938, the trustee, unquestionably, properly withheld and deducted and paid to the Federal tax officials in each of the years 1936, 1937 and 1938, pursuant to the provisions of sections 143(b) and 143(c) of the Revenue Acts of 1936 and 1938, ten per cent of the amounts of the annuities payable to beneficiaries who were nonresident aliens not engaged in trade or business in the United States and not having an office or place of business therein and residing elsewhere than in the Dominion of Canada. It also in the year 1936 properly deducted and paid to the same tax officials pursuant to the provisions of sections 143(b) and 143(c) of the Revenue Acts of 1936 and 1938, ten per cent, and in the years 1937 and 1938, five per cent of the amounts of the annuities payable to such beneficiaries as were non-resident aliens not engaged in trade or business in the United States and not having an office or place of business therein and residing in Canada; and should so continue as long as the provisions of sections 143(b) and 143(c) remain in full force and effect and not otherwise amended or repealed. Sections 143(b) and 143(c) of the Revenue Acts of 1936 and 1938 were in effect during the taxable years 1936, 1937 and 1938, and the same sections of the Revenue Act of 1938 were in effect at the time the bill for instructions was filed, and their plain terms leave no alternative but compliance by the trustee.

But in order that an annuity constitute "annuities * * * or other fixed or determinable annual or periodical gain(s), profit(s), and income" within the meaning of sections 211(a) and 143(b) of the Revenue Acts of 1936

and 1938, or constitutes "income * * * which is to be distributed currently by the fiduciary to the beneficiaries," within the meaning of section 162(b) of said Revenue Acts, it must be payable solely from income. It is not enough that an annuity is in fact paid from income. Under the terms of its creation it must be payable solely from income.[15] If an annuity is chargeable against the estate as a whole, including both principal and income, it is not an "annuity * * * or other fixed or determinable annual or periodical gain(s), profit(s) and income," within the meaning of the provisions of sections 211(a) or 143(b), nor "income which is to be distributed currently by the fiduciary to beneficiaries" within the meaning of section 162(b) of the Revenue Acts of 1936 and 1938. Hence it is that if, in the event of a deficiency in income or for any other cause, the annuities payable to the present nonresident, alien beneficiaries may be charged against the whole trust estate, including corpus, then such annuities are not "fixed or determinable annual gains, profits and income" nor income which is to be "distributed currently by the fiduciary to the beneficiaries," within the meaning of sections 211(a), 143(b) and 162(b), respectively, of the Revenue Acts of 1936 and 1938.

In the final analysis, therefore, the determination of the rights of the nonresident, alien beneficiaries on the one hand and those of the present trustee on the other depend upon the construction to be placed upon the provisions of the will and codicils in respect to the source of payment of annuities, *i.e.*, whether annuities are payable solely from income or in the event of a deficiency in income or for any other cause corpus may be legally required to contribute in whole or in part.

It is difficult in many instances to determine whether

---

15 *Helvering* v. *Butterworth*, 290 U. S. 365, 370.

an annuity is chargeable against the corpus or income of an estate, or both. Each case necessarily depends upon the particular language employed in the will. Ordinarily, a direction to pay an annuity out of income charges only the income and not the corpus of the estate, unless a contrary intention appears. This is upon the theory that the direction negatives resort to corpus in the event of a deficiency in income. If, however, despite such direction, the will as a whole manifests an intention to charge an annuity not alone against the income but in the event of a deficiency in income to charge the entire estate as a whole, such intention will be given effect.

In the instant case, therefore, the will and codicils of the testator must be examined to determine whether the direction "to devote sufficient of the annual income derived from the same [trust estate] toward paying the * * * annuities" is specific in the sense that if income were deficient, corpus could not be resorted to, to supply such deficiency, and the annuities would fail in the proportion that income should prove inadequate or merely demonstrative, *i.e.*, that the annuities should be paid at all events, the income of the trust estate being pointed out by way of demonstration only.

The will and codicils of the testator are inartistically drawn. They are the product of the layman and not of the lawyer or of one learned in the law. Their very inartificiality, however, point the way to the testator's intention. Moreover, all ambiguity is removed when their terms are examined in the light of the facts and circumstances surrounding the testator at the time he executed his will and codicils and the reasons that apparently motivated their terms and provisions. Both intrinsically and extrinsically, it is apparent that the dominant intention of the testator was that the trust fund created by his will be preserved for the duration of the trust and with

its accumulations distributed intact to the persons ultimately entitled thereto.

First, as to the will itself. All the so-called annuities created by the will and codicils are for fixed annual amounts. The amount of income annually necessary to satisfy them was and is known. The testator directed his trustee to devote "sufficient" of the annual income derived from the trust toward paying the same. The testator, who certainly was in a position to know, apparently was of the opinion at the time he executed his will and codicils that the annual income from the residue of his estate remaining after the payment of the pecuniary legacies would exceed the aggregate amount of the annuities. The testator did not anticipate that the annual income from the trust estate would be insufficient to yield the amount of the annuities. Such a state of mind indicates an intention that income and not corpus should be the source of payment.[16]

Further, the testator designated income as the source of annuity payments. Such designation impliedly negatives resort to corpus.[17]

While the testator refers to the bequests charged against the income of the trust estate as "annuities" they, legally, are not annuities as ordinarily defined, but on the contrary are mere gifts of income. The testator limited this payment to income to be derived from the trust estate and in the event of failure of income from the source the annuities fail *pro tanto*.[18]

Finally, the will contains the direction that "On the final ending and distribution of the trust, the 'trust fund' to be divided equally amongst those persons entitled at

---

[16] *Delaney* v. *Van Aulen*, 84 N. Y. 16.

[17] *Einbecker* v. *Einbecker,* 162 Ill. 267, 44 N. E. 426; *Skinner* v. *Taft*, 140 Mich. 282, 103 N. W. 702.

[18] *In re Smathers' Will*, 234 N. Y. Supp. 99.

that time to the aforementioned annuities." By the term "trust fund" the testator unquestionably meant the trust fund as originally created or as subsequently increased by the excess of the annual income remaining after "sufficient" thereof had been used to satisfy annuities. It was apparently the intention of the testator that the entire trust fund should be held *in solido* for the duration of the trust. The gift over is perfectly consistent with the assumed opinion of the testator that the annual income would be substantially in excess of the amount required to pay annuities. It, similarly as the direction of the source of payment, negatives the right to use corpus for the payment of annuities.

But if any doubt might remain upon the question of the testator's intentions as to the source of the payment of annuities, the facts and circumstances existing at the time of the execution of his will and codicils and the reasons that apparently motivated their terms and provisions effect its complete removal.

The testator at the time of the execution of his will was seized and possessed of considerable property. He survived its execution by less than ten months and his estate for inheritance tax purposes was appraised at $283,738. It consisted of real estate at Wahiawa of the appraised value of $125,000; real estate at Honolulu of the appraised value of $3500; and cash, bonds, notes and stocks of the aggregate appraised value of $155,238. He also owned assets in Ireland of the value in excess of $8000. The real estate at Wahiawa was under lease to a responsible tenant for a term to expire in 1950 at a reserved annual rental of $10,000 over and above taxes. The customary interest rate on real estate mortgage loans in the Territory then obtaining was seven per cent, and on collateral loans six per cent.

The pecuniary legacies amounted to $36,850. In 1909,

when the administration was concluded, after the payment of debts, taxes, legacies and administration expenses, there was distributed to the trustee in addition to the Wahiawa and Honolulu real estate, personal property aggregating $121,114.54. In other words, the "balance, residue or remainder" of the estate of the decedent comprising the trust estate created by the will and codicils was of the value, including the real estate at its originally appraised value, of $249,614.54.

The total amount of the individual annuities provided for by the will and codicils of the testator, to be paid by the trustee of the trust estate created by said will, is $8350. Seventy-seven hundred dollars of these annuities were given to designated beneficiaries for their lives and then to their heirs. The remaining $650 was given to designated beneficiaries for their respective lives only. These facts properly applied confirm the construction placed upon the terms and provisions of the will.

Not alone, however, do the facts disclose a trust estate, the income to accrue from which was and would continue to be substantially in excess of the amount annually required to satisfy all annuities, but it also appears that the testator purposely and advisedly resorted to all the means available to increase the corpus for the benefit of the ultimate recipients of the trust fund. He, unquestionably, appreciated that if such excess could be permitted to multiply, the corpus of the trust estate would correspondingly increase. The element of time, however, was important and hence not alone did he expressly provide that the trust should endure for as long a period as it was legally possible, but in order to prolong that period as long as he was physically able, he selected as the first-takers a group of annuitants, the average age of whom was under 20 years. Of the individual annuitants to whom the annuity was for their lives and then to their heirs, there were forty-

five in number. From so much as is known of the dates of their respective births, their average age as of January 21, 1904, the date of the will and codicils (eliminating fractions of months), was 19.246 years, a joint life expectancy according to the American Experience Mortality Tables of approximately 42.87 years. In other words, at the time of the execution of the will and codicils the anticipated duration of the trust, measured by the lives of those in being and 21 years afterward, was approximately 63.87 years.

The efficacy of expressly providing that the trust endure as long as the law allowed and also prolonging the period of the joint lives of the first-takers has been demonstrated by results. During the probate administration of the estate the trustee received only the income from the real property included in the estate. After the probate administration was closed the trustee received all of the income from whatever source. From the accounts filed by the trustee, it appears that for the year ending December 14, 1905 it received $11,080; for the year ending December 14, 1909, $17,046.14; and there has been a steady annual increase ever since, the trustee having received for the year ending April 30, 1942, $54,358.51.

The testator, at the time of the execution of his will, was also, undoubtedly, of the further opinion that due to existing economic conditions a gradual increase in values of urban and suburban real estate on the island of Oahu might be reasonably expected. The substantial increase in the value of both on the island of Oahu during the last four decades may be judicially noticed. Here again time plays an important part. On March 9, 1939, the date of the commencement of this suit in the circuit court, the value of the assets of the trust created by the testator was in excess of a million dollars, obviously the result of accumulations of excess income remaining each year after

the payment of existing annuities and the unearned increment attributable to the real estate.

The reasons which apparently motivated the testator to make the will and codicils he did, and the means resorted to by him to make their provisions effective, are inconsistent with the use of principal, in any event for the payment of annuities. It was unquestionably his design and purpose to create through his testamentary trustee a large wealthy trust estate, and this, irrespective of the natural claims of those who by blood were entitled to his bounty, or of the merits of those to whom it might be ultimately distributed to receive the same. The testator was never married. He was one of four children; in addition to himself, there were two sisters, Eliza and Sarah, and a brother Sam. Eliza alone survived the testator. The heirs at law of the testator, in accordance with the laws of descent of the Territory of Hawaii, were his sister Eliza, a niece and nephew by his deceased sister Sarah, and two nieces, four nephews, six grandnieces and nine grandnephews by his deceased brother Sam. To his sister Eliza he gave an annuity of $1500. She was not included as a pecuniary legatee. To the children of his deceased brother Sam he gave a legacy of $6000 and an annuity of $1500 a year (excluding Sam's son Hugh as a participant therein). To the same Hugh Galbraith, his brother Sam's son, he gave a legacy of $1000 and an annuity of $300, but for life only. To Martha Dickinson, a granddaughter of his brother Sam, he gave a legacy of $1000 and an annuity of $100 a year. Otherwise his heirs at law by his deceased brother Sam received nothing. To his niece and nephew by his deceased sister Sarah, he gave a legacy of $2000 and an annuity of $300. To his heirs at law he bequeathed, in all, legacies amounting to $10,000 and annuities aggregating $3700, $300 of which were for life only. It would be idle to compute the value at the date

of death of the annuitants, in order to ascertain the aggregate value of the legacies and annuities bequeathed to the testator's heirs at law, and compare the same with what they would have received had their ancestor died intestate. Obviously, the paltry legacies and annuities bequeathed were mere gestures. As years go on and successors to the original annuitants multiply, the annuities will increasingly diminish and serve no useful purpose. The annuity to the testator's sister Eliza is now enjoyed by eleven persons, two of whom receive $500 a year and nine $55.55 per year. The annuity to his brother Sam's children is now enjoyed by thirty-six persons, three of whom receive $300 per year; one $150; three $80.36; three $26.78; three $21.42; four $5.36; seven $3.06; nine $2.14; and three seventy-one cents. The annuity to Hugh Galbraith has lapsed. The annuity to the children of his sister Sarah is now enjoyed by twenty-six persons, one of whom receives $37.50 per year; three $25.; six $18.75; four $8.33; four $6.25; and eight $2.08. As a demonstration of the salutary use of annuities as a means of support, the whole scheme is a failure. As a part of the means of prolonging the duration of the trust and the realization of the ambitions of the testator, it is a huge success.

It is simply a matter of mathematics to compute what will be the probable value of the trust estate upon the death of the survivor of the original individual annuitants, the expectancy of the joint lives of whom promises the continuance of the trust from January 21 of this year for a further 24.87 years. The result, assuming the continuance of the current rates of interest, will be enormous. In addition to the annuity for life to Hugh Galbraith, those to the other annuitants for life only have lapsed also, thereby decreasing the annual outlay by $650.

The terms and provisions of the will and codicils, not only in themselves but viewed in the light of the sur-

rounding facts and circumstances, sustain the conclusion that the testator intended that income and income alone should be the sole source of payment of all annuities.

Having concluded that the annuities created by the will and codicils of the testator are payable solely from income and that they come within the respective terms employed in sections 211(a), 162(b) and 143(b) of the Revenue Acts of 1936 and 1938 heretofore quoted, it necessarily follows that the trustee, in deducting and withholding from the annuities payable during the taxable years 1936, 1937 and 1938 and paying to the proper tax authorities the Federal income taxes assessable against the recipients under section 211(a), was merely acting in compliance with the provisions of sections 162(b), 143(b) and 143(c) of the Revenue Acts of 1936 and 1938 and as the designated statutory administrative agent of the annuitants. The tax imposed by section 211(a) is against the recipients of income based upon income received by them from sources within the United States and not against the income itself. Section 211(a) expressly recites that the tax therein levied is "in lieu of the tax imposed by sections 11 and 12" ordinarily applicable to persons in receipt of taxable income from sources within the United States. The requirements of sections 143(b) and 143(c) refer to the same subject matter as sections 211(a) and 162(b). Section 162(b) of the Revenue Acts of 1936 and 1938 declares that income currently distributable by fiduciaries to beneficiaries is includable by fiduciaries in computing the income of beneficiaries.

The taxes imposed under section 211(a) of the Revenue Acts of 1936 and 1938 being those assessed against the recipients of income, it remains to be determined whether it was the intention of the testator to exempt the annuitants from the payment of taxes assessed against them by the phrase employed in the will "free and clear of all taxes."

In 1904, and at the time the testator executed his will and codicils, there was no Federal income tax. During the year 1904, and for some years prior thereto, the Territory ·of Hawaii imposed an income tax on incomes in excess of $1000 derived by every person, whether residing in the Territory or not, from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory.[19] Bequests otherwise taxed as such were not included in assessing income.[20]

During the year 1904 and for some years prior thereto, there also existed in the Territory of Hawaii an inheritance tax.[21] By it there was imposed upon all property and income therefrom which passed by will, except in certain instances with which we are not concerned, a tax of five per cent on the clear market value of the same,[22] and permitted the fiduciary ·to deduct the amount of the tax from the legacy or property for distribution.[23]

No doubt the testator knew of the existence of the Territorial laws in respect to both types of taxes, and we may assume that he was advised upon the legal application of each in respect to any legacies and annuities that he might bequeath. His will contains the same provision of immunity from taxes in respect to legacies as is provided in respect to annuities.

Provisions in wills granting to devisees or legatees immunity from taxes, in the absence of definition of the type of taxes referred to, should be construed in connection with the subject matter and the ordinarily accepted purpose of such provisions. The subject matter is the administration of the estate of a decedent. The ordinarily

19 Sess. Laws 1901, Act 20; R. L. H. 1905, c. 99.
20 Sess. Laws 1901, Act 20, § 4; R. L. H. 1905, § 1281.
21 Laws 1892, c. 106, am. Laws 1896, Act 21; R. L. H. 1905, c. 100.
22 R. L. H. 1905, § 1290.
23 R. L. H. 1905, § 1291.

accepted purpose is that a devise or bequest vest or be distributed undiminished by any burdens imposed upon the legal representative by reason of his ownership or administration of the estate of his decedent. It does not ordinarily refer to burdens imposed by law upon the recipient after vesture or distribution. Otherwise the immunity would follow the *res* indefinitely and relieve the recipient, at the cost of the estate, of all taxes imposed by reason of ownership by the recipient. Such a construction would result in an absurdity.

There is a dearth of authority construing testamentary provisions exempting devises and bequests from taxes. Those cited by appellant, with the possible exception of *In re Johnson's Estate*, 211 N. Y. Supp. 276, *aff'd* 241 N. Y. 513, 150 N. E. 534, have not proved helpful. Nor are the English cases cited of any educational value upon the instant issue. The history of English legislation upon "death duties" is comprehensively set forth in *Knowlton* v. *Moore*, 178 U. S. 41, 47, and all the English cases cited by the appellants merely construe the English death duties, and the successive legacy, succession, and estate duty-tax statutes. A monograph by Walter Stracham, in 33 Law Quarterly Review at page 172, upon income taxes in relation to annuities, indicates that all the English authorities upon death duties, legacy, succession and estate duty taxes, including those cited by the appellant nonresident aliens, depend for their rationale upon the respective statutes involved.

In the *Johnson* case the testator directed his executors and trustees to pay to his wife one half of the net income of the estate so long as she should live, in quarterly payments, to commence immediately upon his death, and that the same should be free of any and all tax charges whatsoever which, if any, should be paid from and out of his general estate. The appellate division held that under

the terms of the will it was incumbent upon the trustees to pay one half of the net income from the residuary estate to the wife, and in addition pay the amount of any tax imposed by the United States or by the State of New York on such income. The *Johnson* case, however, is readily distinguishable from the instant case. The source of the payment of Federal and State income taxes received the attention of the court. It referred to the provisions of the will that "Any and all tax or duty imposed on the transfer of any property hereunder, I direct shall be a charge upon my general estate and shall be paid from and out thereof by my executors." It also considered extrinsically that the testator was a man of large affairs, enjoying a large income and paying taxes in proportion; that he must have known at the time he made his will that his widow's income would be substantially increased by the provision that the income taxes should be borne by his general estate, and concluded that his intention was that the income payable to his widow should not be burdened or charged with any income taxes existing or which might thereafter come into existence. No direction is contained in the Galbraith will as to the payment of taxes nor the source of payment. Moreover, to the contrary, of the solicitude for his wife manifested in the Johnson will and commented upon by the court as a determining factor upon the question of the testator's intention, no such solicitude is present in the Galbraith will.

In our opinion the testator by use of the provision "free and clear of all taxes" intended that the annuities created by the will and codicils should be free and clear of all taxes imposed upon the trustee by reason of its ownership of the trust *res* or its administration, and that he did not thereby intend any immunity from taxes personal to the annuitants upon the annuitants when and after received by them.

Pursuant to the views herein expressed the decree appealed from is affirmed.

*A. Lewis, Jr.,* for appellants Arthur Galbraith, et al., and *A. Lewis, Jr.,* appellant, as guardian ad litem for James Moore, a minor, and Hugh Connor, an incompetent person.

*W. H. Heen* and *M. K. Ashford* for appellees Ivy A. Galbraith, et al.

*Anderson, Wrenn & Jenks* for petitioner-appellee Hawaiian Trust Company, Limited, Trustee under the will and of the estate of George Galbraith, deceased.