ROBERT J. BRENT, } for the Caveator.
GEORGE G. BRENT, }

JOS. H. BRADLEY, } for the Caveatee.
NICH. BREWER OF JNO. }

WILLIAM H. CONKLING ET AL. }
vs. }
THE WASHINGTON UNIVERSITY } MARCH TERM, 1849.
OF MARYLAND }
AND }
EDWARD GREEN. }

[CONSTRUCTION OF DEEDS—POWER OF THIS COURT TO GIVE RELIEF WHERE A TRUST CANNOT BE EXECUTED ACCORDING TO ITS PROVISIONS—PARTNERSHIP.]

The Washington Medical College of Baltimore executed on the 24th of July, 1835, a deed of trust conveying to certain trustees therein named, upon the trusts therein expressed, a leasehold interest in a lot of ground, in the city of Baltimore. The deed recites, "that towards erecting a building on said lot, the sum of $50,000 has been agreed to be contributed by various persons, who are to be identified by being the owners of certificates therein described, and that said college has agreed with said persons to secure the reimbursement of their respective contributions, and the payment of the dividends arising thereon, in the manner therein pointed out." The form of the certificates is then prescribed, each being for the sum "of $60 part of said $50,000, to be entitled to a dividend proportioned to its amount when the same shall arise, payable semi-annually by the treasurer, for the time being, of the college ; said sum to be accepted by the party to whom the certificate is issued, or his assigns, in discharge, to that extent, of said deed, and of his claim to the property thereby conveyed, when tendered at any time after the 4th of July, 1845, by the grantors, or their assigns." The trusts are, 1st. That the grantor shall occupy and use the property, and receive the rents and profits thereof until sold and disposed of as is therein provided. 2nd. That if the dividends on said certificates shall be in arrear, and unpaid for one year from the date thereof, then it shall be lawful for the grantees to sell the property, and out of the proceeds, pay and reimburse the owners of said certificates the full amount of the principal moneys mentioned in

43*

them, and all dividends that shall have accrued thereon, and pay over the residue, if any, to the grantor, or its successors, or assigns." HELD,

That this deed does not place the contributors and the corporation in the relation of partners with each other, or among themselves : that it provides simply for a loan of money by the contributors to the corporation, to secure the repayment of which, the latter gave them a lien upon the lot and premises in question, and that, consequently, they have superior rights to any creditor of the corporation becoming such after the execution of the deed.

That it sufficiently appears that the dividends were to arise from the profits to be derived from the use of the buildings, and that from the nature of the trust, it was the duty of those having charge of the finances of the college, to ascertain and declare such dividends, and that the deed was not, therefore, void by reason of the uncertainty of its provisions in reference to the making of dividends.

In 1841, S. K. J. recovered a judgment against the college for $10,894 08, which was entered to the use of E. G., the defendant, to the extent of $6,000, and the residue to another person. Upon this judgment a *fi. fa.* was issued and levied upon the property conveyed by the above deed of trust, and on the 27th February, 1843, E. G. become the purchaser thereof, at the sheriff's sale for $6,500. Upon a bill filed by the contributors praying for a sale of this property upon the ground that the college had become incapacitated for fulfilling the requirements of the trust, and performing the agreements and conditions upon which the contributions were made : it was HELD,

That since the sale of the title of the corporation to E. G., the college was not in a condition to perform the requirements of the deed, and as the leading object of its execution was to secure the reimbursement of the principal sums advanced by the complainants, they are now entitled to the interposition of this court in such form as will accomplish that object.

It is now settled, that if the purposes of a trust cannot be accomplished without the most serious delays and inconveniences, the court will direct a sale or mortgage of the estate, though a power is only given to raise money for these purposes in a different way.

A power or direction in a will to raise money out of the rents and profits of an estate to pay debts, or portions, has been held to include in it a power to sell and mortgage, when it is necessary to raise the money for the purposes of the trust, upon the ground that otherwise it might be impracticable to raise the money.

Even in cases where the party is not wholly without remedy, but the interposition of the court is called for, simply to accelerate the payment of the debt, the authorities show, that the courts will grant relief by decreeing a sale, and, *a fortiori*, will they do so when the only remedy of the creditor is to be found in the power of the court in decreeing a sale.

Partnership effects must be first applied in liquidation of the claims of joint creditors, before any partner can claim anything for his share or debt, and after a determination of the partnership, each partner is entitled to be allowed against the other every thing he has advanced or brought into the concern, and nothing will be considered as the share of any one, but that proportion of the residue to which each, on a balance of the accounts, will be entitled.

Assuming that the contributors and the corporation can be regarded as partners, still E. G., who is only a judgment creditor of one of the partners, cannot be preferred to the contributors who are creditors of the partnership for advances made to it.

The sale, under the *fi. fa.* could only transfer the interest of the corporation, at the date of the judgment, and would be subject to all judgments, liens and outstanding equities existing against it, anterior to that time.

The excess of one partner's advances over those of the other, constitutes a preferred claim upon the partnership property, or its proceeds, as against the individual creditors of the bankrupt partner.

[The bill was filed on the 24th of May, 1843, by the complainants, in behalf of themselves and all others interested under a deed of trust therein mentioned ; and states that the corporate body then styled the Washington Medical College of Baltimore, but now, (by virtue of the act of 1838, ch. 138,) styled the Washington University of Baltimore, did, by a deed, dated 24th of July, 1835, convey to the complainants, Conkling, Frasier, Corner and Mayer, the leasehold piece of ground therein described, in trust to secure payment of dividends and principal to those who should advance to said corporate body sums of money, part of a proposed sum of $50,000, towards erecting a building, the Washington Medical College of Baltimore, on said ground ; said persons to be identified by holding certificates of indebtedness of said corporate body, in form as specified in said deed. That the contemplated building was to be used by said corporate body as a college for medical instruction, and as a hospital and lunatic asylum. That the complainants, with the exception of Mayer, contributed sums to the amount of $30,000, within the terms of said deed of trust, with which, and the contributions of others, a building as aforesaid was erected on said piece of ground, which was used by said corporate body, from its completion, for at least seven years, and until the sale hereinafter mentioned, for the medical instruction aforesaid, and as a hospital and lunatic asylum, during which period, said corporate body derived from said building, and such use thereof, large issues and profits, from which dividends, within the purport and intent of said deed of trust, should have been paid to the complainants upon their advances, but that no such dividends have

been paid to them, and they aver that dividends to each and all of them accrued are in arrear, and so have been for more than one year. That the terms of said deed of trust, require that half-yearly dividends should be paid on the amounts advanced, and upon default for one year in such payment, the trustees are authorized to sell said ground, and out of the proceeds, pay as well the principal sums contributed, as the accrued and unpaid dividends. That the complainants are holders of certificates described in said deed.

The bill further charges, that one Samuel K. Jennings recovered judgment against said corporate body for a large sum of money, for the use of Edward Green, upon which a writ of *fieri facias* was levied on all the interest and property of said corporate body in and to said piece of ground, and that by virtue of such writ and levy, a sale of such interest was made to said Green, on 27th of February, 1843, by which means, said corporate body has, as your orators aver, become incapacitated for fulfilling the terms and requirements of said trust, and performing the agreement and conditions under which said advances and contributions were made. That they have sought payment of their dividends and principal aforesaid, in vain from said corporate body, which they charge to be now utterly insolvent. The bill then prays for a sale of the said ground and building for payment of the principal and dividends of and on said contributions and advances, and for further relief. The defendants are the Washington University of Baltimore, and said Edward Green.

The answer of the college was filed on the 9th of May, 1844, and admits the execution of the deed set out in the bill, and that the complainants have advanced moneys for the purpose contemplated by said deed ; the erection of buildings with said advances, and that from the year 1836, said buildings have been and still are used by respondent, as a college for medical instruction, and as a hospital and lunatic asylum, and that. it has received moneys for such use of said buildings from time to time, and that no dividends have been paid to the parties advancing moneys as aforesaid, and that none such have ever ac-

crued or become payable upon such advances, according to the true construction of the deed aforesaid, which contemplates the payment of such dividends only out of the net receipts, to arise from the use and employment of said buildings, after they had been constructed and properly furnished.    That there never has been any such net receipts at any period, on the contrary, respondent has always been largely in debt, for the construction and furnishing said buildings, and carrying on the operations for which they were intended.

The answer also admits the recovery of a judgment against respondent, by Samuel K. Jennings, for the sum of $10,984 08, on or about the 9th of February, 1841, who afterwards entered the same in part to the use of Edward Green, who caused an execution to be issued thereon and levied upon the interest of respondent in the property conveyed by the deed of trust, and hath bought the same at sheriff's sale, under said writ.    It further states that respondent is insolvent, but that it has never failed to fulfil any of the requirements contained in the deed aforesaid, and that it is now in possession of the buildings erected as aforesaid, and using them for the purposes contemplated by said deed ; that by the true construction of said deed, the principal thereby secured, is payable only at its pleasure, and after the 24th of July, 1845, and that the parties advancing the same, have no right or power to demand its reimbursement, or to have a sale of the university property.    That the only contingency in which such a sale can be made, is that of the semi-annual, or other dividends, being in arrear for the space of twelve months, and that there never have been any semi-annual or other dividends declared, or due, or payable in the premises.

The answer of Green, filed on the 7th of January, 1845, submits that said deed of trust is not valid, or binding as against the creditors of said corporation, because the same was made to secure the stockholders of said corporation in preference to its creditors, and that the certificates proposed to be issued by said deed, were, in fact, certificates of stock and not loans to said corporation, and that if complainants advanced

any money, it was as stock in said corporation. He admits the erection of a building as described in the deed and its said use, for at least seven years after its completion, and up to the time of the sale to respondent. He denies that any profits arose from such occupation, or that any demands within the purport of said deed have ever become due or payable. He also admits the rendition of the judgment in favor of said Jennings for the use of respondent, and the levy upon, sale, and purchase by him of said property, and submits that for the reasons assigned by his co-defendants in their answer, the said complainants have no right of redress.

THE CHANCELLOR:

This case which has been argued by counsel on both sides, has been considered by the court. Its decision must depend upon the construction of the deed of the 24th of July, 1835, between the Washington Medical College of Baltimore of the one part, and Charles F. Mayer and others of the other part.

By that deed, the Washington Medical College, which had been incorporated by an act passed in the year 1832, ch. 189, conveyed to the grantees, a leasehold interest in a lot or parcel of ground in the city of Baltimore, held under a deed, to the grantor from one George Williamson, subject to a ground rent of one hundred and fifty dollars per annum. It recites that "towards the erecting a building to be called the Washington Medical College of Baltimore on said ground the sum of fifty thousand dollars in various amounts, has been engaged, and agreed by sundry persons to be contributed, which persons shall be identified by being the owners of the certificates hereinafter mentioned. And that the Washington Medical College of Baltimore have agreed with said persons, that they shall severally and respectively, be secured as hereinafter stated, the payment and receipt of dividends arising on the amounts of their respective contributions, in semi-annual payments, on the first of January and July respectively, in every year, &c., and that the reimbursement of the principal of said contributed amounts, has also, by the party of the first part,

been agreed with the said persons to be secured in the manner and in the event hereinafter stated." Here follows the form of the certificate to be issued to the contributors, and by which they were to be identified. Each certificate being for the sum of $60, "part of the sum of fifty thousand dollars mentioned in and secured by means of the deed of trust executed by the Washington Medical College of Baltimore on the 24th of July 1835." "The said sum of $60 to be entitled to a dividend proportioned to its amount when the same shall arise payable semi-annually, &c., by the treasurer for the time-being of the college." "The said sum of $60 to be accepted by the party to whom the certificate is issued, or his assigns, in discharge, and extinguishment, to the extent of said sum, of said deed of trust, and his claim to, or interest in said deed of trust, and the benefit thereof, and of said piece of ground, and premises, thereby conveyed, when tendered at any time after the 4th day of July, 1845, by the grantor aforesaid, of said trust, or their assigns," &c.

The trusts of this deed are, *first*, that the grantor shall be allowed to hold, occupy and use the property, and receive the rents, issues and profits thereof, until sold and disposed of, as in said deed is afterwards mentioned. *Second*, "that if the dividends stipulated in the certificates to be paid, shall be in arrear and unpaid, for the space of one whole year, from the dates thereof respectively, that then it shall be lawful for the grantees to sell the property, &c., and out of the money arising from said sale, after satisfying and paying all arrearages of rent due on said premises, pay and reimburse to said owners of said certificates, the full amount of the principal moneys mentioned in said certificates, and all dividends that shall then have accrued thereon, and the residue, if any, shall and will pay over to the grantor in the deed, or its successors or assigns." The bill in this case, which was filed in the year 1843, avers, and it is admitted, by an agreement in writing, that the plaintiffs (except Mr. Mayer) are the holders of certificates, under the deed of trust, and that they contributed moneys as mentioned in said deed, so as to entitle themselves to such certificates, which

moneys were expended in the erection of buildings on the lot, conveyed by the deed, and that the buildings so erected have been occupied and used by the college for medical instruction, and as a hospital and lunatic asylum, from the year 1836, and although, as appears by the answer of the college, moneys have been received by it, for the use of the buildings, it is denied, (and there is no evidence establishing the contrary,) that any dividends have accrued or have been declared or become payable, upon the moneys advanced by the contributors, according to the true construction of the deed ; which, as their anwer insists, are payable only out of the net profits.

It appears by the pleadings, proofs and admissions, that on the 9th of February, 1841, Samuel K. Jennings, one of the original founders of the college, and a member of the corporation, at the date of the deed of trust, recovered a judgment against the college, in Baltimore County Court, for the sum of $10,894 08, which judgment, on the 23d of the same month and year, was entered for the use of Edward Green, to the extent of $6000, and for the use of John W. Richardson, for the balance. That on the same day, a writ of *fieri facias*, issued upon the judgment which was levied upon the property in question, and that on the 27th of February, 1843, Edward Green became the purchaser thereof, at the sale of the sheriff for the sum of $6500, and that a conveyance has been duly executed to him by that officer, dated on the 8th day of the then succeeding month of March.

The bill prays for a sale of the property upon these grounds, 1st. Upon the ground that the accrued dividends have not been paid within the period prescribed by the deed, and 2nd. Because of the sale and transfer of the title to Green, the corporate body have become incapacitated for fulfilling the requirements of the trust, and performing the agreement and conditions under which the advances and contributions were made. .

The claim to relief under the first head is not pressed, and need not, therefore, be considered. The answer of the college, which admits the possession and use by it, of the buildings from the year 1836, as a medical college hospital and lunatic asy-

lum, states that it is still using them for those purposes : and upon this statement, it has been argued that the corporation is not shown to be disabled from performing the requirements and stipulations of the deed. In the answer of Green, however, a different ground appears to be taken, it being there stated, that the buildings were used for these purposes from their completion, and up to the time of the sale to and purchase by him. The inference from this answer is, that subsequently to the purchase by Green, the buildings had not been used by the college, for the purposes contemplated by the deed. It is not deemed necessary, however, to examine this question, because it is very clear, that since the sale of this title of the corporation to Green, if it has retained the possession at all, it must be under and in subordination to him as his tenants, and by his sufferance, and that so far as the corporation is concerned, Green must be entitled to the rents, and may use the buildings for any purpose he may please. The college, therefore, I think, are not now in a condition to perform the requirements of the deed. This being the case, the complainants say, that as the leading objects of its execution, was the securing the reimbursement of the principal sums advanced by them, they are now entitled to the interposition of this court, in such form as will accomplish that object. The trustees cannot sell, because the event upon which they might exercise the power given them by the deed has not happened, and now since the sale to Green cannot happen, no dividends can accrue, and of course none can be in arrear, and the question therefore is, (assuming for the present the deed to be valid,) whether this court, in view of the manifest intent and meaning of the instrument, will not supply those remedies without which that intent and meaning must be frustrated.

It seems now to be settled, that if the purposes of a trust cannot be accomplished, without the most serious delays and inconveniences, the court will direct a sale or mortgage, though a power is only given to raise money for this purpose in a different way. Or if a will contain a direction or power to raise money out of the rents and profits of an estate, to pay debts or portions, if necessary to raise the money, the courts have held

44

such a power to include in it, for the purposes of the trust, a power to sell and mortgage, upon the ground that otherwise it might be impracticable to raise the money. Mr. Justice Story says, that this is the doctrine established by the more recent cases in opposition to older decisions, which restricted the power to the mere annual rents and profits. 2 *Story Eq.*, *section* 1064.

And even in cases in which the parties are not wholly without remedy, but the interposition of this court is called for, simply for the purpose of accelerating the payment of the debt, the authorities show, that the courts will grant relief, by decreeing a sale to accelerate the payment, and, *a fortiori*, will they do so, when the only remedy by the creditor is to be found in the power of this court of decreeing a sale. In such a case, in the language of the Supreme Court of the United States, in *Barton* vs. *Smith et al.*, 13 *Peters*, 464, they will "not leave the creditor to look on in hopeless despondency, except through the interposition of a court of equity in decreeing a sale." It is said, however, that the deed is void, because of the uncertainty of those provisions which have reference to the making of dividends. The argument is, that it does not appear from what source the dividends are to accrue, or by whom they are to be ascertained and declared. Now I think that though the terms employed are not so explicit as they might be, that it does sufficiently appear that the dividends were to arise from the profits to be derived from the use of the buildings, and this was the manifest understanding of the college, as appears by its answer, which says, that the deed contemplated the payment of dividends out of the net receipts to arise from the use and employment of the buildings. The same ground is virtually taken by Green in his answer, which relies upon the defences set up in the answer of the college. As to the objection that no persons were designated to ascertain and declare the dividends, this, from the nature of the trusts, was a duty to be performed by those having charge of the finances of the institution. But the great object of this bill is to procure a decree for the sale of this property, for the satisfaction, not of the in-

terest upon these sums of money, or dividends in the place of interest, but the principal sums themselves, and with regard to the mode in which the principal sums were to be paid, and the source from which the money for their payment was to arise, there is clearly no uncertainty.

The important question, therefore, as it seems to me, is, whether these plaintiffs who contributed this money, in the manner, and for the purpose stated in the deed, are to be regarded as creditors having a lien · on this property, by virtue thereof, or as partners with the corporation, and, consequently, in a contestation with regard to the partnership effects, to be postponed to the claims of creditors.

Upon a careful consideration of the terms of the deed, I can find nothing in it, which places these contributors, and the corporation in the relation of partners with each other, or among themselves. It appears to me to have provided simply for a loan of certain sums of money for a specified purpose, for the payment of the interest upon which the lenders were willing to look to the dividends which might be derived from the profits, to arise from the use of the property, so long as it should be used for the purpose of medical instruction, with a right to sell for the repayment of principal and interest, upon the contingency mentioned in that behalf. It is immaterial in what form the evidence of the loan was to exist, whether in the shape of certificates or notes or bonds.

The deed makes no provision for the apportionment of dividends among the contributors and the college; but each sum of $60 is to receive a dividend in the proportion which it has to the whole sum advanced. There is no stipulation, then, that the corporation and the persons who might advance the money to erect the buildings, should participate in the profits, which might make them partners; but the profits in the shape of dividends are to be divided among the contributors exclusively, with an agreement, that after the 4th of July, 1845, the corporation might get clear of the incumbrance upon their property, by paying off the principal sums. If a partnership had been designed, or had been at all within the contemplation of the

parties, it is scarcely to be doubted, that some estimate would
have been put upon the lot, as that, and this money advanced,
would have constituted the capital of the firm.  But still, as
has been said, that though these parties may not have intended
to become partners, and may not bear that relation to each oth-
er *inter sese*, yet the contract between them, may be such as to
make them partners *inter alios*, and it is insisted that the agree-
ment as to dividends, is of that character.  But as we have
seen, the agreement, with regard to the dividends, does not ex-
tend to the corporation, and there is, therefore, no stipulation
between it and the contributors for participation in the profits.
My construction of this deed is, that it provides for a simple
loan of money by the contributors to the corporation, to re-
ceive the payment of which the latter gave them a lien upon
that lot and premises in question, and that, consequently, that
they have superior rights to any creditor of the corporation,
becoming such after the execution of the deed.

But assuming that these contributors and the corporation are
partners, is it quite clear that Green, the judgment creditor
of one of the partners, is entitled to be preferred over a partner
who is, himself, a creditor of the firm ?  Partnership effects
must be first applied in liquidation of the claims of the joint
creditors before any partner can claim anything for his share,
or debt; and when an account is taken between partners, af-
ter a determination of the partnership, each partner is entitled
to be allowed against the other, everything he has had ad-
vanced, or brought into the concern, and nothing will be con-
sidered as the share of any one of them, but that proportion
of the residue to which each, on a balance of the accounts, will
be entitled.  *Gow on Part.*, 258, 259.  In the settlements of the
accounts between these contributors and the corporation, suppos-
ing them to be partners, the joint debts are first to be paid,
then the claims of either partner against the partnership,
and the surplus only would be divided between the part-
ners in just proportions.  To the share of the corporation
of this surplus, and to nothing more, would Green be enti-
tled, as his claim is not against the firm, but against one

of the partners, to wit, the corporation, against whom alone, the judgment under which he purchased was rendered.

As decided by the Court of Appeals in the case of *Richardson* vs. *Stillinger*, 12 *Gill and Johns.*, 477, 483, the seizure and sale could only transfer the interest of the defendant, the corporation, at the date of the judgment, and would be subject to all judgments, liens, and outstanding equities existing against him anterior to that time. The claim of Dr. Jennings, upon which this judgment was rendered, and under which Green purchased, was a claim against the corporation alone, and it would therefore seem to follow, that even if the contributors and the corporation can be regarded as partners, that still, as against them, they being creditors of the partnership for advances made to it, Green would not be entitled to be preferred, and especially so as Jennings, under whom he claims, had actual, as well as constructive, notice of the deed of trust. The excess of one partner's advances over those of the other, constitutes a preferred claim upon the partnership property or its proceeds, as against the individual creditors of the bankrupt partner, and as in this case, the corporation is conceded to be bankrupt, its individual creditors must give way to the partner who made the advances. *Pierce* vs. *Tiernan et al.*, 10 *Gill & Johns.*, 253.

Upon the whole, I am of opinion that these plaintiffs are entitled to a decree for a sale, and will so decree, the money to be distributed among the parties according to the views herein expressed. If any portion of the claim of Dr. Jennings is for advances, which will put him, or his assignee, Green, on a footing of equality in the contribution with the plaintiffs, he will be allowed to come in with them, and his rights, in that respect, will be reserved.

CHARLES F. MAYER and JOHN NELSON for Complainants.

J. MASON CAMPBELL, JOHN GLENN and THOMAS G. PRATT for Defendants.