Arthur Ronald Lambert Field Tree, Appellee, v. Isabel Rives et al., Appellees, Continental Illinois National Bank and Trust Company of Chicago, as Co-Trustee et al., Appellants.

Gen. No. 45,363.

Opinion filed June 18, 1952. Released for publication July 17, 1952.

WILSON & McILVAINE and MAYER, MEYER, AUSTRIAN & PLATT, all of Chicago, for certain appellants; CALVIN F. SELFRIDGE, and SHERWOOD K. PLATT, both of Chicago, of counsel.

DANIEL J. LAMONT, of Chicago, for certain other appellants; DANIEL J. LAMONT, and JOHN J. KENNELLY, both of Chicago, of counsel.

VERNON R. LOUCKS, of Chicago, for certain appellee; CHARLES O. LOUCKS, JAMES L. HENRY, both of Chicago, of counsel.

EDWARD B. HAYES, Lord, BISSELL & KADYK, ROY R. BARR, all of Chicago, and CHARLES H. STEPHENS, JR., of Cincinnati, Ohio, for certain other appellees; EDWARD B. HAYES, of Chicago, of counsel.

ISHAM, LINCOLN & BEALE, of Chicago, for certain appellees; CYRUS H. ADAMS, and GEORGE B. YOUNG, both of Chicago, of counsel.

CLARENCE J. BASSLER, of Chicago for certain appellees.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff, one of the income beneficiaries, brought this action to construe the last will and testament of Lambert Tree, deceased. Plaintiff also is a co-trustee under said will. All parties in interest were made parties to the complaint, answers were filed, and upon a final hearing the court entered a decree which found:

"The amount now available to the plaintiff from the income of said trust is entirely insufficient to maintain him according to his position in life and entirely insufficient to carry out the intention expressed by Lambert Tree as to the purpose of the trust he created in paragraph Twentieth of his will.

"It was Lambert Tree's intention and purpose in creating the trust provided for in paragraph Twentieth of his will, that said trust fund should be used to carry out his aforesaid intention and purpose, and contemplated that if necessary the principal of said

359

funds should be used to carry out said purpose and intention. It is necessary that $600,000 of principal be used to carry out said purpose and intention, and if the Court does not direct that such principal be used for that purpose, this Court would be frustrating the general and overriding intention and purpose of the testator."

The decree directed the trustees to forthwith pay plaintiff, out of the corpus of the estate, $600,000, from which decree defendant bank, as co-trustee of said will, appeals.

The pertinent provisions of the will in the consideration of the contentions here considered are as follows:

"EIGHTEENTH:—I give and bequeath to my son, Arthur M. Tree, Howard G. Grey, at present my agent, and the Merchants Loan & Trust Company Bank of Chicago, or to such of them as shall qualify and accept the trust hereby created, and to the survivors and survivor of them and their successors in trust, the sum of fifty thousand dollars ($50,000.00) in money or securities owned by me at the time of my decease, (whichever my executors may deem most convenient for my estate, and if in securities the same to be selected by my executors), in trust for the use and benefit of my grand-son, Arthur Ronald Lambert Field Tree. The said trustees shall keep the said sum invested and the net income therefrom, or such portion thereof as my trustees in the exercise of a sound discretion may deem necessary or proper, shall be applied for the use of or paid to my said grand-son, and when he shall attain the age of thirty (30) years the principal sum of said bequest and the unexpended or accumulated income therefrom, if any, shall be paid over to my said grand-son for his own use. If my said grand-son shall die before reaching the age of thirty (30) years the said trust fund shall upon his death go to and belong

360

to his widow, if he shall leave one him surviving: otherwise the same shall revert to and form a part of my residuary estate. It is my earnest hope that his father will see to it that my said grand-son is educated in the United States, of which he is a citizen and where his pecuniary interests will be chiefly located, and where his forbears for many generations have lived and died, in order that he may have instilled into him in his youth an affection and veneration for the institutions of his country, and be able intelligently to perform his share of the duties and burdens of American citizenship, of which it can not be gainsaid, there are many.

" . . . .

"TWENTIETH:—I do hereby give, devise and bequeath unto the said Arthur M. Tree, Howard G. Grey and the Merchants Loan & Trust Company Bank of Chicago, or to such of them as shall qualify and accept the trust hereby created, and to the survivors and survivor of them and their successors in trust, all the rest, residue and remainder of my estate, real, personal and mixed, of every name and nature and wherever situated, of which I shall die seized and possessed, or to which I may in any way be entitled to at the time of my death, remaining after the payment of my just debts and the expenses of administration, together with such legacies and bequests as are herein before made, except the unaccrued payments on the annuities given by this Will, which from and after the settlement of my estate in the Probate Court shall be paid to the annuitants by my said trustees out of the income of my estate in their hands, subject to the payment of which annuities said estate so vested in said trustees shall be held in trust for the following purposes:—

361

"To pay to my said son Arthur for his use and benefit the net income of said trust estate (subject to the reservation hereinafter in this Will mentioned) until my said grand-son Arthur Ronald shall arrive at the age of thirty (30) years, and if that event happens and the said Arthur Ronald is at the time a man of temperate habits and good moral character, then and thereafter to pay to him, the said Arthur Ronald, one-quarter of the net income of said trust estate, and to my son Arthur the remaining three-quarters of the net income of the said trust estate, for and during the term of his natural life.

"Upon the death of my son Arthur the net income derived from said trust estate shall be paid to the said Ronald and any other child or children born in lawful wedlock of my said son, Arthur, and the survivors of them, from time to time, during the continuance of the trust, in equal shares; provided, however, that in the event of the death of any of my said son's children, born in lawful wedlock as aforesaid, during the continuance of the trust hereby created, leaving issue surviving, such issue shall receive the same share of the income of said trust estate which such deceased child would have been entitled to receive if living; and provided, further, that while any beneficiary entitled to share in said income shall be under the age of thirty (30) years the said trustees shall, out of his or her share of said net income, make a suitable allowance for the support, maintenance and education of such beneficiary, taking into consideration his or her rank and condition in life; and the residue of his or her share of said net income shall be retained and kept invested by said trustees until such beneficiary shall arrive at the age of thirty (30) years, at which age any accumulation of his or her share of said net income shall be paid over and delivered to such a beneficiary.

"The trust hereby created shall continue until the death of my son Arthur and of the children of my said son Arthur born in lawful wedlock; provided, however, that in any event the trust hereby created shall cease and determine at the expiration of twenty-one (21) years after the death of the last survivor of my said son and his children born in lawful wedlock prior to my decease.

"Upon the termination of the trust hereby created one-half of the trust estate then remaining in the hands of my said trustees shall go to and be distributed between the lawful issue of my said son Arthur, *per stirpes,* in the same shares and interests in which they would inherit property owned by him if he had died intestate under the laws of the State of Illinois: and in the event that no lawful issue of my said son Arthur, born in lawful wedlock, shall then survive, then one equal half of the said trust estate shall go to my heirs at law. The other equal one-half of said trust estate I give and bequeath to St. Luke's Hospital of the City of Chicago, in the State of Illinois, . . .

" . . .

"The disposition above provided of the principal and income of said trust estate is subject always to the provision hereinbefore made that all the annuitants hereinbefore provided for shall in any event be first paid out of the income of the said trust estate, and a sufficient amount of the said trust estate shall be retained by said trustees to discharge and pay the said annuities so long as said annuitants, or either of them, shall survive.

"Neither my said son Arthur, nor either of his children, or any of their issue, shall have power to anticipate, assign, transfer or otherwise dispose of the

whole or any part of the income payable to him or them, or either of them, under the terms and provisions of this article of my will, it being my intention hereby to provide for the comfortable support and maintenance of my said son and his children, and their issue, during the life of the trust hereby created, in the manner and to the extent hereinbefore provided, and which shall not be liable to be diverted from the purposes aforesaid, either by the act of the parties or by process of law.

"TWENTY-FIRST:—My said trustees are directed to reserve and set aside ten per cent (10%) of the net annual income of the trust estate in their hands under the twentieth article of this will up to sixty thousand dollars ($60,000.00), and twenty per cent (20%) of the excess of the net annual income of said trust estate above sixty thousand dollars ($60,000.00) as a building fund and as a protection against the impairment of said trust estate by accidents or other contingencies. The fund so reserved and set aside shall be known as the Improvement Fund, and the same shall be kept separate, apart and distinct from the residue of said trust estate, and shall be kept invested at interest in safe securities until the same shall be used in the making of improvements upon real estate owned by said trustees hereunder; provided, however, that in the event that the net annual income from said trust estate shall in any year be less than sixty thousand dollars ($60,000.00), and shall be in the opinion of the trustees in charge of said fund, insufficient to give the beneficiaries entitled thereto an adequate income to enable them to live according to their position in life, then said trustees shall have the right, in their discretion, to decide what percentage of said income less than ten per cent (10%) shall be reserved and added to said Improvement Fund in such year, having ref-

erence to doing justice to my son and his child and children.''

In *Tree v. Continental Ill. Nat. Bank & Trust Co.,* 346 Ill. App. 509, we considered the foregoing provisions of the will and said (p. 519):

'' . . . the instant will clearly creates a spendthrift trust for the benefit of Arthur and Ronald and limits their interests to the net income of the trust. There is not even the usual provision found in such wills that the trustees, in their discretion, may resort to the corpus of the trust in the event they find the net income insufficient to maintain the beneficiaries of the spendthrift trust. The language employed in the instant will expresses the clearest intention on the part of the testator that neither Arthur nor Ronald should have or enjoy, during his lifetime, more than the net income of the trust estate. The usual provisions against diversion by the act of the parties or operation of law and the restriction against assignment of their interests are typical of a spendthrift trust.''

 Plaintiff challenges the right of the bank, as co-trustee, to appeal from the instant decree. A similar question was raised between the parties in *Tree v. Continental,* etc., *supra,* where we sustained the right of the bank, as co-trustee, to appeal. What we there said is applicable here.

The testator died October 9, 1910, and his will was admitted to probate in the probate court of Cook county on December 31, 1910. He left him surviving Arthur M. Tree, his only child, and Ronald (plaintiff), his only grandchild. Arthur Tree died September 26, 1914, leaving plaintiff, his only child, surviving. Plaintiff is now 52 years of age, and his life expectancy is shown to be 19.91 years. He has three children, Michael, age 28; Arthur, age 24, and Penelope, the minor, born December 3, 1949. Plaintiff is a subject

of Great Britain but has established his residence in New York City, obviously for income tax purposes. He testified that under the tax laws of Great Britain he would not be permitted to keep over $20,000 of income. He now receives, and will during the remainder of his life, all of the distributable net income of the trust created by the will. In 1949 plaintiff received approximately $256,000 from the net income of the trust, and substantially the same for 1950. The average income received by plaintiff from the trust since 1941 has been between $200,000 and $250,000 per annum. The net income of the trust has not been below $60,000 in any year since its operation. The approximate value of the trust estate when it became effective was $5,000,000, and the value has since increased to approximately $7,000,000.

On December 16, 1938, the trustees under the will in question filed a complaint in the circuit court of Cook county to construe the will and to have determined whether certain property acquired by the trustees was chargeable to the income or principal of the trust estate. Upon a hearing of said complaint a decree was entered approving a "settlement agreement" reached between the parties in interest, whereby $500,955.58, consisting of real estate, securities and cash, was awarded to Ronald, plaintiff herein. As long as plaintiff resides in the United States his income based on previous years, without allowance for any increase in the net income of the trust, will be approximately $135,000 a year, after taxes. He testified it would cost him more than $100,000 a year to live in England in the manner he desires; that in England he would have only $20,000 left from all of the income, after taxes, hence the reason for asking for the allowance out of the corpus of the trust.

██ We have already determined in the previous appeal (*Tree v. Continental,* etc., *supra*) that there is

no direction in the will to resort to the corpus if necessary to maintain plaintiff, and no provision in the instant will giving the trustees any discretion to resort to the corpus of the trust in the event they find the net income insufficient to maintain the beneficiaries of the spendthrift trust, and that the will clearly expresses the intention on the part of the testator that plaintiff should not have or enjoy during his lifetime more than the net income of the trust estate. In the light of our previous holding, and in the absence in the provisions of the will of any discretion in the trustees to invade the corpus of the trust for the benefit of the beneficiary of the spendthrift trust, a court is not authorized by construction to secure for the beneficiary greater individual financial advantages than those provided in the will and intended by the testator. To permit it would be to deprive the remaindermen of a substantial portion of the corpus which would rightfully belong to them under the clear provisions of the trust. As said in *Altemeier v. Harris,* 403 Ill. 345, 355:

" . . . the object and purpose of a trust created by a will cannot be varied or terminated unless the purpose of the trust is accomplished, nor can such a trust be terminated by unanimous consent where it contains spendthrift provisions or where contingent interests cannot be definitely ascertained."

The line of cases upon which plaintiff depends to support his claim of necessity to invade the corpus for his maintenance (such as *Longwith v. Riggs,* 123 Ill. 258; *Spengler v. Kuhn,* 212 Ill. 186, and *Curtiss v. Brown,* 29 Ill. 201), are hardship cases, where the court determined that it was necessary to invade the corpus and that such invasion did not do violence to the intention of the testator. The cases relied upon by plaintiff are factually distinguishable with regard to the provisions of the will in each case, as well as the show-

367

■

ing of hardship. In the instant case plaintiff's theory of hardship is not supported by the proof. There is no such showing of hardship by the plaintiff as would justify invasion of the corpus were the cases relied upon by him deemed applicable to the instant case. There is no basis in law or upon the facts to justify the instant decree.

The decree of the superior court is reversed.

*Reversed.*

KILEY, P. J. and LEWE, J., concur.