STALEY, Guardian ad Litem, Etc. et al. *v.* LIGON

(Two Appeals in One Record)

[No. 295, September Term, 1964.]

*Decided May 26, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*John A. Beck*, with whom was *John J. Pyne* on the brief, for the trustee, one of the appellants.

*William C. Staley* for the guardian *ad litem*, etc. et al., the other appellants.

*James F. Tomes*, with whom were *G. Gregg Everngam* and *Everngam, Tomes & Spragins* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal is from an order of the Circuit Court for Montgomery County, directing a testamentary trustee to mortgage real estate in the corpus of an estate worth some $170,000, in order to raise funds with which to pay the present life beneficiary the monthly sum of $1,000.

The will of John F. Ligon, late of Montgomery County, left the residue of his estate, consisting largely of three commercial buildings, to trustees (a trust company and his lawyer; the lawyer has died) who were directed to hold and manage the estate and from the rents and profits to "* * * pay all instalments due on mortgages, taxes, special assessments * * *" and to "* * * set aside such sum as in their discretion may be necessary as a reserve against depreciation of the buildings and for repairs and improvements thereon * * *" and thereafter pay from the net income fifty dollars a month to a sister of the testator for her life, and then to:

"* * * use the balance then remaining of the entire net income of the said trust estate [and all at the death of the sister] for the reasonable support and mainte-

nance of my beloved wife, Veryl W. Ligon, and that the entire net income then remaining of the said. trust estate shall be paid to her so long as she shall live; except that in the event my beloved wife shall become mentally or physically incompetent, then the said Trustees may accumulate the income of the said trust estate herein created and pay to my said wife such sum or sums at such intervals as may, in the opinion of the Trustees, be necessary for her health, welfare, comfort and entertainment."

Upon the death of the widow the income given her for life was to go to the testator's son for life. Upon his death such income went to or for the use of the lawful issue of the son in equal shares for stated periods of years, after which they were to receive the estate outright.

The testator died in 1953 and the sister and the son have died since. The son left surviving him three children, all still minors. From 1953 to 1958 the gross rents of the three buildings in the trust—4918 Bethesda Avenue and 4914 Bethesda Avenue in Bethesda, and 3421 Connecticut Avenue in Washington—were apparently about $17,000 a year, and the widow received an income of $800 a month from the rents, plus some $5,000 a year from dividends on the stock of a family corporation in the trust. Some desirable tenants moved in 1958 and when new tenants were secured it was at lower rents in some instances. Mrs. Ligon received but $156 a month from January 1, 1958, to January 31, 1959, when payments were increased to $400 a month. In July of 1960 nothing was paid, in August $400, and thereafter nothing from September 1960 until May of 1961, when $200 was distributed. In June, July and August of 1961, $400 was paid each month. Thereafter, there were no distributions until May of 1962 when $200 was paid. The same amount was paid each succeeding month to and including May of 1963. In June of 1963 the distribution was increased to $400 a month and it has continued at that rate up to August 1964, the time of the hearing below.

The representative of the present corporate trustee testified that from the gross income received monthly are deducted taxes,

insurance, mortgage payments and other charges directed by the will to be charged to income, pro rated monthly, and what is left is distributed to the widow, the life tenant. The trustee estimates the present value of the three real properties in the trust to be approximately $210,000, subject to mortgages of $24,250 on the building known as 4918 Bethesda Avenue, and of $19,250 on the building known as 3421 Connecticut Avenue. The record suggests that both mortgages were outstanding when the testator died.

In late 1962 the trustee was notified by the public authorities that a new heating plant would have to be installed in 4918 Bethesda Avenue and a new sidewalk and curbing built along its front. The income of the estate was insufficient to pay the cost of these improvements and leave anything, for some time, for the life tenant, the pleadings of the trustee represented to the court.

The widow was a week shy of seventy at the time of the hearing. She had enjoyed a carefree comfortable life when her husband was alive, having a maid and a house man and her own car. Mr. Ligon gave her $1,000 a month to run the house. She has been under the care of a psychiatrist since the death of her son in 1955, and has had to have shock treatments. She spent $2,500 on medical bills in 1963, and in other years since 1955 has spent from $1,000 to $2,000 for her health. In addition to her income from the estate (now apparently only that produced by the rents), she receives only a monthly social security payment, although until 1964 she had income from insurance left by her husband. Her present expenses are $600 a month, exclusive of medical expenses, including the rent of an apartment in which she lives alone.

At the hearing below a trust officer of the corporate trustee testified that it had paid the cost of the new heating system and paving on August 10, 1964, and had on hand only $425.37 of income. Real estate taxes of $2,900 would be due Montgomery County in a few weeks. He added: "Under the circumstances if this relief is not granted certainly we must discontinue the payments to the life tenant."

The phrase "this relief" referred to the request of the trustee to the Circuit Court, that it be authorized to borrow $5,000 to

pay for the cost of the heating plant and the sidewalk and curb-ing, and to secure the loan by putting a mortgage of $29,250 on 4918 Bethesda Avenue in place of the existing mortgage thereon of $24,250. The trustee also sought blanket authoriza-tion to make similar loans from time to time as the occasion required. The widow's answer to the petition agreed to the im-mediate borrowing of $5,000 and urged that the chancellor au-thorize additional borrowings on the security of the corpus of the estate to provide money to enable her to live in the style desired and expected by her late husband and to which she was accustomed and entitled. She also asked that the trustee be au-thorized to sell the real estate in the trust and from the proceeds pay her a sum each month sufficient to properly maintain her.

The infant grandchildren of the testator, potential income beneficiaries and certain ultimate remaindermen, answered by guardian ad litem, submitting their rights to the protection of the court. The guardian ad litem took the position at the hear-ing—shared, it would appear, by the mother of the infants—that the chancellor had no right to invade corpus for the benefit of a life tenant and no right to authorize indefinite and unlim-ited future borrowing on the security of corpus but that the court could validly allow the trustee to encumber the property to pay for improvements that are required to be made because "* * * the whole purpose of this trust is to perpetuate these properties and I think that is reasonable * * *."

Judge Pugh read the will to show that the primary purpose of the testator was to "properly care for his surviving widow" and that by authorizing the trustees, in the event she became "mentally or physically incompetent" to accumulate the net in-come and from it pay to her such sum or sums "* * * at such intervals as may, in the opinion of the trustees, be necessary for her health, welfare, comfort and entertainment," the testator intended his widow to have "all of these necessities of life from his estate." The chancellor reasoned that this paramount inten-tion he had gleaned from the will authorized a deviation from the testator's clearly expressed dispositions of income and cor-pus and permitted an invasion of corpus for the benefit of the life tenant at the expense of later life tenants and remainder-men. He ordered the trustee to mortgage 4918 Bethesda Ave-

nue for $50,000 and, after paying off the existing mortgage of $24,250, to use the remaining balance of $25,750 to supplement net income payable to the widow so as to produce for her the sum of $1,000 a month. The trustee and the guardian ad litem appealed.

We think Judge Pugh was clearly in error, both in his reading of the will and in his ordering the invasion of corpus for the use of the life tenant, the widow. The intent and purpose of the testator was made plain in his will in precise and unambiguous words. He desired to have the real estate he had acquired held by the trustees to provide income for his widow, his son and his son's children and then, at stated times, to pass free of trust to his grandchildren.

The widow, the son and the grandchildren, as a group, were all to receive the entire net income (after the payment of $50.00 a month to the sister) with but one exception:

> "* * * except that in the event my beloved wife shall become mentally or physically incompetent, then the said Trustees may accumulate the income of the said trust estate herein created and pay to my said wife such sum or sums at such intervals as may, in the opinion of the Trustees, be necessary for her health, welfare, comfort and entertainment."

This exception did no more than confide in the trustees the power to decide, if the widow became in fact incompetent, how much of all the income which otherwise would be payable to her, should be paid at any one time and for what purposes. The entire net income still was hers, but nothing more was given. *Burt v. Gill,* 89 Md. 145. The exception did not alter the intention of the testator that each income beneficiary (or beneficiaries) receive all the net income and it gives no hint that the testator intended the widow to be the primary beneficiary of his bounty, with the son and grandchildren being secondary.

No words in the will leave room for the argument that the testator intended corpus to be used by or for the benefit of the widow, the son or the grandchildren before the time when, under the specific directions of the will, the latter were to receive the corpus free of trust. Certainly, the provision giving the

trustees the power and discretion to expand for the benefit of an incompetent widow the income she otherwise could expend for herself cannot give support to such an argument. The stated purpose of the will, that the real estate is to remain as such in the trust estate and that no one shall receive any corpus until the specified distributions in kind to the grandchildren, is manifest. The trustees are not given any power of sale. There is nothing from which such a power could be implied. Miller, *Construction of Wills* (1927), Secs. 183-185. The trustees are directed to receive the rest and residue of the estate "and retain the same" and to "otherwise hold and manage" the same. Further it is provided: "The Trustees shall retain in this trust the property known as 3421 Connecticut Avenue, N. W., Washington, D. C., and the property located at Bethesda Avenue and Ligon Lane [4918 Bethesda Avenue] * * *." In directing distribution of the corpus, the testator said that 3421 Connecticut Avenue should be conveyed to the grandchildren as tenants in common and at the final distribution that the trustees need not sell any real estate but may, in their discretion, convey it to the grandchildren as tenants in common.

Inasmuch as the testator clearly gave the widow and the son and the grandchildren a definite right for life or for years to the net income of the estate and gave no right to corpus, express or implied, to anyone other than the grandchildren, the court was without power to order corpus to be given to the widow, for to do so would be to give one cestui part of a fund which the testator gave to another, without the consent of that other. This the decisions and the text writers say cannot be done. *Hughes v. Federal Trust Co.* (Ct. Ch. N. J.), 183 Atl. 299. There the Court refused the life tenant the relief the chancellor in the case before us gave her. To the argument that the testatrix would want the life tenant to have this relief, the New Jersey Court said it had no doubt this might be true "* * * but the fact remains that she gave Mrs. Hughes [her daughter] only a life interest. I cannot rewrite the will." See also *In re Van Deusen's Estate* (Calif., Traynor, J.), 182 P. 2d 565, 571, 572; *In re Cosgrave's Will* (Minn.), 31 N. W. 2d 20, in which there is a full discussion of the reasons why corpus may not be invaded for the benefit of one who has only a life interest;

*Tree v. Rives* (App. Ct. Ill.), 106 N. E. 2d 870; *In re Van Decar*, 98 N. Y. S. 309; Restatement, Second, *Trusts* Sec. 168, comment d; 3 Bogert, *Trusts and Trustees* (1946), Sec. 561 (pp. 491, et seq.) ; and 2 Scott, *Trusts* (2nd Ed. 1956), Sec. 168. In the Anno. "Invasion of Trust Principal," 1 A. L. R. 2d 1328, at pp. 1333-1334, the editor summarizes the authorities thus:

> "If full force is to be given to the language of the majority of the cases, the conclusion must follow that in most jurisdictions the power of a court of equity to authorize an invasion or deviation from the terms of a trust in unforeseen circumstances not contemplated by the trustor is rightly exercised only in matters of administration—such as the sale, mortgage, or pledge of trust property, the making of investments, the hastening of enjoyment, or the early termination of the trust contrary to the instrument—and is not in any case to be extended to an extinction or reduction of the interests of any of the beneficiaries."

As to possible exceptions to this rule, it is said at p. 1343 of the same annotation :

> "Where there is nothing in the instrument or circumstances to show that the trustor regarded the welfare of the income beneficiary as of primary or predominant importance, and also, probably, where it is not clear that such was his attitude toward that beneficiary, it must ordinarily follow that the application for invasion of corpus is to be denied."

Maryland has not had occasion to speak directly on this point, but cases on related questions indicate that it would concur with the majority of jurisdictions. *Cf. Stouffer v. Clagett* (Md., unreported), 32 Atl. 284; *Allen v. Safe Deposit & Trust Co.*, 177 Md. 26.

Although the chancellor had no right to direct the mortgaging of 4918 Bethesda Avenue to raise money to pay to the widow for her support and needs, he should have, in our opinion, authorized the mortgaging to raise $5,000 to pay for suddenly

called for improvements to the property in the nature of capital additions. The testator's purposes, easily discernible from the clearly worded terms of his will, were to keep the commercial real properties in the trust until the grandchildren (or their descendants) received the trust corpus outright and to use as much of the income they produced as was necessary in the discretion of the trustees to maintain them as income producers for the benefit of the life tenants and, ultimately, for the remaindermen. Quite obviously the testator did not contemplate that income would shrink to the point of being unable to meet the demands of taxes, interest and maintenance and still offer a comfortable return to the beneficiaries.

This was made plain by the amount of income the properties produced during his life, the directions that they be retained in the trust and the failure to provide a power to sell or to mortgage the buildings,[1] coupled with what must undoubtedly be true, that he did not want or expect his widow, his son or his grandchildren to be without a reasonable income from the trust.

The change in conditions that caused the shrinkage in income and the sudden call to spend $5,000 on what were essentially capital additions are sufficient reasons, in our view, to bring into play the application of the rule that a court of equity will authorize a deviation from the terms and directions of a trust instrument (provided this does not result in taking the property of one beneficiary and giving it to another) if owing to circumstances not anticipated by the trustor compliance would defeat or substantially impair the accomplishment of the purposes of the trust. Restatement, Second, *Trusts* Sec. 167 (see comment a and illustrations 6 to 12), and Sec. 191, comment d, illustrations 1 and 2; 4 Bogert, *Trusts & Trustees* (1946), Sec. 762; 2 Scott, *Trusts* (2nd Ed. 1956), Secs. 167 and 191.2;

---

1. While no express power to mortgage corpus is given in the will, such a power, although less readily implied than a power to sell, might be implied under Stengel v. Royal Realty Corp., 179 Md. 204, if its exercise were needed to refinance mortgages existing when the testator died and the property came into the hands of the trustees but it could not be implied for the purpose of raising funds for improvements and maintenance. Stump v. Warfield, 104 Md. 530; 4 Bogert, Trusts & Trustees (1946), Secs. 757-758.

*cf. Burroughs v. Gaither,* 66 Md. 171; *Conkling v. Washington University of Maryland,* 2 Md. Ch. 497, 505; *Offutt v. Jones,* 110 Md. 233.

The borrowing of the $5,000 on the security of the mortgaged building to pay for improvements to it would be consonant with and further the paramount purposes of the testator to maintain the commercial buildings in the trust as producers of income, during and after the trust, and at the same time give a reasonable income to the life tenants.

Such borrowing would not be prejudicial to the best interests of the grandchildren. It would enhance the value of the property improved, which must be maintained·if it is to give them income as life tenants or an ultimate outright legacy of real worth. The expenditures should add to the value of the building at least as much as, if not more than, the amount expended.

The beneficiaries agree—the infants to the extent the law permits—that the mortgaging of 4918 Bethesda Avenue to pay for the improvements to that building would be reasonable and proper. The chancellor should have authorized the exercise of the power sought by the trustee.

> *Order reversed and case remanded for passage of an order in conformity with this opinion, costs to be paid from the corpus of the trust estate.*